AARDEL WALTERS, APPELLANT, V.
JOHN DAVID WALTERS, APPELLEE.
673 N.W.2d 585

Filed January 13, 2004.   No. A-03-181.

Maurice A. Green for appellant.

Thomas Blount, Jr., of Bertolini, Schroeder & Blount, for appellee.

SIEVERS and INBODY, Judges.

SIEVERS, Judge.

## INTRODUCTION

After the dissolution of the marriage of Aardel Walters and John David Walters, Aardel appeals from an order of the district court for Red Willow County that denied her motion to modify the dissolution decree concerning visitation with the parties' two

minor children. For the reasons set forth herein, we reverse, and remand with directions.

## BACKGROUND

Aardel and John were divorced pursuant to a decree of dissolution entered on March 28, 2000. The parties are the parents of four children, born on November 30, 1978, August 10, 1981, June 28, 1985, and December 30, 1990. At the time the decree was entered, one of the children had reached the age of majority and custody of the remaining three children was awarded to John with reasonable visitation rights granted to Aardel consisting of every other weekend, alternating major holidays, and an extended period of time during the summer based upon the children's activities and schedules. The decree also provided that overnight visitation and related details were to be as mediated by Aardel's counselor and the children's counselor. Of significance is the provision in the decree that visitation "shall be subject to modification upon the application of either party *without* a showing of a material change of circumstances." (Emphasis supplied.) The decree was the product of the parties' agreement, but rather than written into a separate property settlement agreement, their agreement and stipulation were incorporated into the decree, which they agreed to by their signatures.

On November 4, 2002, Aardel filed a motion to modify visitation in connection with the parties' two youngest children, who had not reached the age of majority, alleging that there was a material change of circumstances in that the restriction placed on Aardel's visitation rights regarding the involvement of counselors was not necessary or applicable and that it is in the best interests of those children to be able to establish a routine of consistent visitation with Aardel. At the time of the modification hearing, the two children subject to the motion to modify, Carolyn and Angela, were 17 and 12 years old respectively. The hearing on Aardel's motion to modify visitation was held on January 31, 2003.

The record reflects that the court-ordered visitation schedule has been loosely complied with, at best, since the decree was entered. Aardel testified that immediately after the decree was entered, John convinced her that it would be better for Aardel if

she saw the children for a few hours two or three times a week rather than on the schedule that was set out in the decree. Aardel stated that initially, her visits were always monitored by John, and that eventually, the length of her visitation changed to a full day and then overnight a couple of times. Aardel further stated that once she moved into her home a couple of years ago, she started having an overnight visitation approximately every other weekend, but that she has never had a full weekend visitation.

At the modification hearing, Aardel testified that in regard to her visitation with Carolyn, Aardel wanted such visitation to be more flexible so that it would occur only when she and Carolyn mutually agree on visitation rather than according to the present specific arrangement, which Aardel asserts is not working. With regard to Angela, the youngest child, Aardel would like to have visitation from 5 p.m. Friday until 5 p.m. Sunday every other weekend, from 4 p.m. to 8:30 p.m. every other Thursday, and for a 2-week period every June and July.

Aardel suffers from mental illness and was diagnosed with a bipolar disorder in October 2002. The record reflects that Aardel was hospitalized on four separate occasions in 2002. In January, Aardel attempted suicide and was hospitalized for 5 days. The following June, she was hospitalized twice for 3 to 4 days each time. Aardel indicated that the last hospitalization in June was related to a change in medication and that the hospitalization in October was when she was diagnosed with the bipolar disorder. Aardel testified that many of her problems have been due to the fact her condition went undiagnosed for so long and that since October 2002, she has been given the proper medication that has helped her significantly. Aardel testified that she is under the care of two psychiatrists and that she has been in counseling an average of twice a week for the last 18 to 24 months. Aardel testified that she hopes, if her medication continues to work, to be able to decrease her counseling to once a week or every other week.

Aardel's counselor, Marsha Wilkinson, testified that she has been seeing Aardel since January 2001 and counsels her an average of two times per week. Wilkinson testified that she and Aardel have discussed at length a safety plan that could be implemented if there were an occasion when Aardel was not feeling up for a

scheduled visit. Wilkinson stated that Aardel would have access to two crisis lines that are available 24 hours, 7 days a week, so that Aardel could get assistance in determining whether a visit would be appropriate, and that if a visit were deemed not to be appropriate, then Wilkinson or someone within her agency would have the authority to contact John to make alternative visitation plans. Wilkinson stated that Aardel has utilized the services available to her in the past and that she is willing to continue to utilize them. Wilkinson also stated that it has never been necessary to cancel a scheduled visit. Wilkinson further indicated that she is comfortable with the safety "net" that has been put in place and that based on Aardel's level of motivation and consistency in following through in the past, Wilkinson believes that Aardel is making every effort to be certain that the children are safe despite her mental health problems. Wilkinson further stated that Aardel prefers not to care for the children when her medication is out of adjustment, in order to ensure the children's safety.

Angela also briefly testified at the modification hearing. At the time, Angela was 12 years old and indicated that she did not understand the purpose of the hearing. Angela testified that while John encourages her to visit Aardel, her own desire to visit Aardel is "so-so" because Aardel "just lies to me and all that stuff," and that it was hard to visit Aardel because Aardel does not let her do the things she wants to do, such as go to basketball games and gymnastics. Angela stated that she had missed gymnastics on two occasions when she was visiting Aardel. Angela further stated that it is usually more "interesting" at John's house because she goes out with her friends, has friends over whenever she wants, uses the Internet on the computer, and goes to basketball games. There was no evidence that Angela's safety has ever been jeopardized while visiting Aardel or that she was fearful of visits with Aardel. Nor was there any evidence of any previous incidents where any of the parties' children had been subjected to an unsafe environment while visiting Aardel.

On February 21, 2002, the district court entered an order denying Aardel's motion, stating that there has been no change in circumstances sufficient to modify the decree and that the best interests of the children do not require any changes to be made. Aardel timely appealed.

## ASSIGNMENTS OF ERROR

Aardel alleges, restated, that the district court erred in finding that (1) it was necessary to determine whether a material change in circumstances existed, (2) no material changes of circumstances existed sufficient to warrant the modification of the parties' visitation schedule, and (3) modification of the decree in relation to visitation was not in the children's best interests.

## STANDARD OF REVIEW

Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children. *Fine v. Fine,* 261 Neb. 836, 626 N.W.2d 526 (2001). Such modification is initially entrusted to the discretion of the district court, whose decision is reviewed de novo on the record and will normally be affirmed absent an abuse of discretion. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*General Considerations.*

Visitation relates to continuing and fostering the normal parental relationship of the noncustodial parent with the minor children of a marriage which has been legally dissolved. *Fine v. Fine, supra.* The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Id.* See Neb. Rev. Stat. § 42-364 (Reissue 1998). The best interests inquiry has its foundation in both statutory and case law. Section 42-364(1) and (2) directs courts to consider the best interests of the minor child in determining custody arrangements and time to be spent with each parent. *Fine v. Fine, supra.* Section 42-364(2) sets forth a nonexhaustive list of factors to be considered in determining the best interests of a child in this regard, including

"[t]he relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing; . . . [t]he desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when

such desires and wishes are based on sound reasoning; . . . [t]he general health, welfare, and social behavior of the minor child; and . . . [c]redible evidence of abuse inflicted on any family or household member."
*Fine v. Fine*, 261 Neb. at 843, 626 N.W.2d at 532.

In addition to these statutory factors, the Nebraska Supreme Court has explained that a court determines the nature and extent of visitation rights on a case-by-case basis and may consider many factors and circumstances in each individual case, such as the age and health of the child, the character of the noncustodial parent, the place where visitation rights will be exercised, the frequency and duration of visits, the emotional relationship between the visiting parent and the child, the likely effect of visitation on the child, the availability of the child for visitation, the likelihood of disrupting an established lifestyle otherwise beneficial to the child, and, when appropriate, the wishes of the child. *Fine v. Fine, supra*; *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991); *Gerber v. Gerber*, 225 Neb. 611, 407 N.W.2d 497 (1987). Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children. *Fine v. Fine, supra*; *Poll v. Poll*, 256 Neb. 46, 588 N.W.2d 583 (1999).

*Material Change of Circumstances.*

Aardel assigns as error the trial court's conclusion that it was necessary for the court to find a material change in circumstances or, in the alternative, that it was error not to find a material change in circumstances. We first determine the validity of the parties' stipulation in the decree that no change in material circumstances had to be proved for a change in visitation. Stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy. *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002). Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in

status quo. *Id*. Disposition of a question pertaining to a child's best interests is not governed exclusively by a parental stipulation. *Zerr v. Zerr*, 7 Neb. App. 885, 586 N.W.2d 465 (1998).

The parties stipulated that the divorce decree would provide, "[T]his Decree with respect to child visitation shall be subject to modification upon the application of either party without a showing of a material change of circumstances," and the decree so provided. Although whether there is a material change in circumstances is one factor courts normally examine when modifying child visitation, it is not the only factor; nor is it the most important factor. It is the children's best interests which are paramount to a decision to modify. Agreeing to allow visitation to be modified without showing a material change in circumstances potentially enhances the visitation rights of both parties by reducing the potential for litigation over visitations, and it makes modification dependent solely on the best interests of the children, not on the nuances of the parties' circumstances.

Further, the stipulation, and the decree, do not contradict the statute controlling child visitation, as the statute looks to the best interests of the child as being paramount in decisions of child visitation and does not require a material change in circumstances. See § 42-364(2). Thus, we find that the parties' stipulation (also expressly made part of the decree, as noted above) is not against good morals or public policy and should have been followed by the trial court. To incorporate this provision in the decree and then ignore it cannot be justified. The trial court erred and abused its discretion in denying modification based on a finding that there was no material change in circumstances. In order to evaluate Aardel's motion for modification, given the stipulation and its prior order, the trial court should have looked to the best interests of the children to determine whether an increase or change in the decree's visitation provisions was warranted.

### Best Interests of Children.

With regard to Carolyn, the oldest child subject to the motion to modify visitation, we note from the record that Carolyn was 17 years old at the time of the modification hearing (January 2003) and will turn 19 in June 2004, less than a year from now.

The record indicates that Aardel and Carolyn do not have a very close relationship and that the operative court-ordered visitation arrangement of "reasonable rights of visitation" currently in place apparently has not enhanced their relationship. The reality is that if the relationship between Aardel and Carolyn is to be nurtured and developed, it likely will not be because of a court-ordered visitation arrangement or schedule. We see no evidence that any harm will result should Aardel's request that visitation occur only upon the mutual agreement of Aardel and Carolyn be granted. In fact, it may well enhance the relationship if they are allowed to attempt to find their own comfort level for visitation. From our perspective, Carolyn's best interests would be served because what Aardel proposes requires a degree of maturity from Carolyn that we would expect to occur naturally as she fast approaches the age of 19.

With regard to Angela's visitation and her best interests, *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002), provides guidance. In *Deacon*, the mother appealed from an order of the trial court, which had denied her motion for specific visitation privileges with her two children. The children's father had eliminated nearly all visitation privileges with the mother because the children did not want to visit her and he thought it was in their best interests not to require it, even though the court had ordered reasonable visitation. During the modification hearing, there was testimony from psychologists and other witnesses that the children lacked a desire to visit their mother and were unhappy to do so. The *Deacon* children, ages 14 and 11 at the time of the appeal, had a good relationship with their father, while their relationship with their mother was "somewhat less." 207 Neb. at 200, 297 N.W.2d at 761. The court found, "While the children have shown no present desire to visit the [mother], this is not an irreversible situation that could not be corrected by the proper attitude of the parents." *Id.* at 199, 297 N.W.2d at 761. The court further stated, "We are not convinced the best interests of the children are served by letting them grow up under the exclusive influence of their father and his attitude without even a chance to establish a meaningful relationship with their mother." *Id.* at

200, 297 N.W.2d at 761. Finally, the court held that the father was to comply with the specific visitation to be ordered by the court on remand and that he and the children should make an effort toward establishing a relationship with the mother.

Similarly, in the case before us, Angela and Aardel do not have a very close relationship and Angela is "so-so" about wanting to visit Aardel. Angela is 12 years old and has apparently been visiting with Aardel every other weekend from noon on Saturday until 5 p.m. on Sunday. Aardel testified that she wanted visitation with Angela for a longer period of time on the weekends in addition to a weeknight visit every other week from 4 p.m. to 8:30 p.m. She further testified that she wanted visitation with Angela for 4 weeks in the summer, consisting of 2 weeks in June and 2 weeks in July. Although Angela testified as to her desire or lack thereof to visit Aardel, that is not the only consideration in determining Angela's best interests. But, the fact of the matter is that the trial court did not make a finding concerning Angela's best interests because of its error in deciding Aardel's burden of proof. The trial court heard and observed the parties and the child, and it should make specific findings on the question presented: Is it in Angela's best interests to change the visitation schedule, and if so, how should it be changed? Accordingly, we remand the matter to the trial court for such findings. Because the only question is Angela's best interests, which are not a static matter, and because time has passed while the matter is on appeal, we find that equity requires that the court hear any new admissible evidence the parties wish to introduce in light of our decision. For obvious reasons, we view the situation with Carolyn, who will shortly be 19, as a much different matter, and thus, we have resolved that part of the case ourselves.

*Mediation by Counselors.*

Although it is not assigned as error, we address as plain error the provision in the original decree stating, "Overnight visitation and other specific visitation details shall be as mediated by [Aardel]'s counselor and the children's counselor," because such a provision is not valid under Nebraska law. It is a well-established proposition that "[t]he responsibility of the trial court to determine questions of custody and visitation of minor children

according to their best interests is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties." *Deacon v. Deacon*, 207 Neb. 193, 201, 297 N.W.2d 757, 762 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002), citing *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978). See, also, *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988); *In re Interest of Teela H.*, 3 Neb. App. 604, 529 N.W.2d 134 (1995). Further, the courts have held that the authority to determine the custody and visitation of a minor child cannot be delegated to a third party, because it is a judicial function. See, *Ensrud v. Ensrud, supra* (Nebraska Supreme Court disapproved of order authorizing child custody officer to control custody and visitation of minor child); *Deacon v. Deacon, supra* (Nebraska Supreme Court reversed order granting psychologist authority to determine visitation and to control extent of visitation); *In re Interest of Teela H., supra* (Nebraska Court of Appeals reversed order granting psychologist authority to determine time, manner, and extent of parental visits with minor child). Therefore, to the extent that the divorce decree requires the counselors in this case to control, determine, or mediate visitation, we disapprove such provision because it is an unauthorized delegation of judicial authority. We therefore vacate that portion of the decree providing for the involvement of the counselors in determining visitation. This is not to suggest that therapists or counselors cannot work with either party or the children on visitation issues—only that the trial court should determine what the minimum visitation shall be.

## CONCLUSION

For the reasons set forth herein, we reverse the decision of the district court to deny modification of visitation, and we remand the cause with directions to modify the decree in a manner consistent with our opinion concerning Carolyn. As to Angela, the court shall make findings concerning her best interests and visitation. Finally, we vacate the portion of the decree requiring any visitation to be mediated by counselors.

REVERSED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.

IRWIN, Chief Judge, participating on briefs.