In re The **MARRIAGE OF** Douglas **STEPHENS** and Leslie Ellen Stephens.

Upon the Petition of Craig Douglas Stephens, Petitioner–Appellant,

and

Concerning Leslie Ellen Stephens, Respondent–Appellee.

No. 11–0054.

Court of Appeals of Iowa.

Feb. 15, 2012.

Judd N. Kruse and Daniel J. Tungesvik of Kruse & Dakin, L.L.P., Boone, for appellant.

Leslie Stephens, Des Moines, pro se appellee.

Considered by EISENHAUER, C.J., VOGEL, J., and SACKETT, S.J.*

SACKETT, S.J.

Craig Douglas Stephens filed a direct appeal from a December 1, 2010 order of the district court finding he was in contempt of court for not following an October 13, 2009 order modifying certain visitation provisions of a decree dissolving his marriage to Leslie Ellen Stephens. We treat his notice of appeal as a petition for writ of certiorari, and find the October 13, 2009 modification order contained an improper delegation of judicial authority. Because Craig cannot be held in contempt for violating said order, we sustain the writ.

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2011).

## I. BACKGROUND AND PROCEEDINGS.

The marriage of Craig and Leslie was dissolved in September of 2006, and the parties were granted joint legal custody of their four children, sons born in February of 1991 and May of 1993, and daughters born in September 1996 and December of 1998. Craig was awarded primary physical care on the basis of a guardian ad litem report.

On July 3, 2007, the district court entered an order modifying the decree and declaratory judgment. The district court found that Craig should continue to have primary physical care of the children and the parties should remain joint legal custodians, but provided Craig did not need to consult with Leslie prior to taking action on the children's behalf. Craig was ordered to notify Leslie within forty-eight hours of the following occurrences concerning the children, (a) any medical care received by any child, (b) any change in any child's prescription medication, (c) any change in any child's legal status, and (d) any change in any child's education, extracurricular activities, or religious instruction.

The modification order also limited Leslie's contact with the children to a therapeutic setting under the supervision of therapist, Susan Gauger; precluded her from contacting the youngest child while Leslie worked at the youngest child's school; and prevented Leslie from approaching or seeking direct contact with any child at any function or location. It also provided for a number of other things including co-parent counseling. The guardian ad litem, Diane Dornburg, was ordered to continue serving for an additional period of one year.

One year later in the summer of 2008, Dornburg filed an extensive recommendation concerning primarily the children's relationships with their mother. She noted Craig put the children's interests as top priority and noted in her opinion he can be trusted to do so in the future. She recommended extensive rules and guidelines for Leslie to follow in exercising visitation.

On October, 13, 2009, the district court approved what was referred to as a "Consent Modification of Decree of Dissolution of Marriage and Order for Modification." Leslie was given minimum visitation with the children, which included after school on Wednesdays until 9 p.m., the second weekend of the month from Friday at 5 p.m. to Sunday at 9 p.m., and the fourth Sunday of every month from 8:30 a.m. to 8:30 p.m. The order also provided that the visits would increase at the discretion of Sue Gauger or her designee, to include, "a. The last weekend day of Sunday works up to the entire weekend; b. Wednesdays move to overnight; c. Weekend moves to Friday–Monday morning; and d. Holidays added."

A little over a month after this modification was entered, on November 20, 2009, Gauger sent a letter to counsel for both Craig and Leslie stating since the modification order she had been bombarded with never ending calls, requests, and demands from Leslie regarding the visitation arrangement. Because the youngest child in particular had indicated a desire to spend more time with Leslie, it was Gauger's recommendation that the two youngest children, age thirteen and ten at the time, begin to spend every other weekend with Leslie starting after school on Friday until Sunday at 6 p.m. Gauger also recommended including holiday visitation, but no extra accommodations be allowed because these requests caused chaos and scheduling problems. The letter stated Craig indicated he would not force any child to go to visitation if that child did not want to go. Gauger also indicated it was not in the best interests of the younger son, then age

sixteen, to be forced to attend visitation with Leslie.

On June 22, 2010, Leslie filed an application for rule to show cause contending Craig had willfully and repeatedly refused to abide by Gauger's recommendations, and refused to notify her prior to the children having medical treatment, and counseling, and failed to notify her of issues relating to the children's schooling. She also claimed Craig had alienated the affections of the children by failing to communicate with her. She asked he be found in contempt, be ordered to comply with visitation recommended by Gauger, support her relationship with the children, and be committed to jail for thirty days on each count of contempt.

The matter came on for trial on November 12, 2010. Leslie testified that the visitation went fine after the October modification and prior to Gauger's recommendation. However, she asserted the visitation was never increased after Gauger's letter because Craig refused to permit every other weekend. She further testified:

Q. .... Out of 16 weekend visits from November 2009 to June 2010, how many would you say that you were actually able to exercise visitation? A. Saying it's eight months, I had eight weekend visits.

Q. According to the increase in visitation, you would have on average been getting two visits—two weekend visits a month; correct? A. Right. So I missed eight weekends.

Q. So from November 2009 to June 2010, you were only getting one weekend visit a month? A. That's correct.

Q. What was happening on the other weekends that you weren't getting visitation? A. As in that should have been my scheduled weekend?

Q. Yes. A. I was getting them for 12 hours on Sunday.

Q. Why were you only getting them for 12 hours on Sunday? A. Because we were not going by Sue's recommendations per Craig's statement.

Q. So would you request to have visitation from Friday to Sunday—A. Yes.

Q. —per the order? A. Yes.

Q. And what were you being told? A. "We're not going by that schedule."

Q. And who was telling you that? A. Craig.

Leslie further related in a thirty-day time period she would have them every Wednesday after school, the second weekend of the month, and the last Sunday of the month, and this schedule was occurring most of the time. She admitted there were times when the children attend events instead of visitation based on Craig's permission and the cancellation was not within her control. She also testified she stopped requesting the second full weekend visit because Craig was not going to let her have it.

Gauger testified she had been providing therapy to the Stephens children since October 2005. She said she had seen the children four times in the two months leading up to the hearing and noted the children reported their mother would criticize their father a lot and hound them with questions. The children reported being stressed out and worried about the questions their mother would ask. The children indicated being angry at their mother for being overly critical of their dad which would make them feel highly uncomfortable. They told Gauger that they have called their father in secret crying and asking him to pick them up because they cannot take it anymore. She further indicated the children see Craig as their safety net, and that if he were to force visitation, the children would be extremely angry with him and their mother. She did not

believe forcing visitation would help the relationships the children had with their parents.

Gauger stated she wrote the letter in November of 2009 recommending additional visitation because the girls had been asking for more time with their mother. However, since that time, the girls told her they liked the visitation schedule of Wednesday evenings, one weekend a month, and one Sunday a month, because it limits their exposure to what they feel are uncomfortable interactions with their mother.

The children have told her that they are allowed to decide whether or not they go with their mother, and Gauger believes the children are aware of their tolerance levels. When she was asked if the children had the skills to deal with the situation, Gauger opined the older daughter had limited skills for coping and her mental health status was in constant flux. Gauger had previously informed Craig that this child has depressive factors in her personality and she needed to be on medication. She further testified if the child were forced to spend more time with her mother, it would increase her tantruming.

Gauger was of the opinion that Craig should encourage the children to spend time with their mother and noted he had done so many times while in her office. She had never gotten the sense that Craig was not encouraging the children to spend time with their mother.

Gauger did acknowledge that it was her understanding the visitation she recommended in her November 2009 letter never occurred. In addition, she believed Craig told the girls that the increased visitation was available to them, but left it up to them on whether or not they wanted the extra time with their mother. She went on to testify that to force visitation particularly with these children would not be good or healthy. She stated she thought Leslie did not get the additional visitation that was recommended because the children had experienced additional difficulties during the visitations and shared with their father that they were uncomfortable.

The court also questioned Gauger asking,

The Court: The Court entered an order and then left a more frequent visitation schedule up to you and then you entered—sent a letter November 20th that triggered the more frequent visitations. It never happened as near as I can ascertain, never happened. So that made the more frequent visitations required but it didn't happen. Now you're telling me that the more frequent visitations probably shouldn't have happened but nothing ever came from you in the record here that changed that. And I guess right now I'd like to know when you changed your mind that the more frequent visitations weren't appropriate.

The Witness: Well, Your Honor, when I initially sent the letter in November of '09, was it, I anticipated that visitations would become more frequent with their mother because up to that point they weren't getting hardly any visitation at all if I remember correctly. So as we entered this, the girls started to have some visitation with their mother, not up to what I had initially recommended. And as that visitation went on, the girls were experiencing difficulties with that visitation. So I guess that's how I would answer that question if I'm understanding.

Ultimately Gauger agreed with the court that the visitation the children were currently receiving, while not in compliance with her November 20th letter, was appropriate under the circumstances of this case.

Craig testified he encouraged his children to go on visits after Gauger made the recommendations, but that he never made them go with their mother if they did not want to. When asked if he could have physically made them go, he said he could not. He denied that he was intentionally withholding visitation, and he believed it was important the children see their mother. He also testified he notified Leslie of medical appointments through email.[1]

At the close of the hearing the district court made a number of oral findings:

It is the finding of the Court that Craig Stephens is in contempt of court. He signed the October 13th decree that provided that limited visitation was to be expanded in accordance with the direction of Sue Gauger.

. . . .

I think it's pretty clear that Craig did not follow the order and the visitation wasn't granted. The question that goes through the Court's mind is: Why are we here? The difference between what was granted prior to Sue Gauger's letter and what was granted by Sue Gauger's letter is approximately one Saturday and two nights a month more visitation plus holiday visitation. That was the only expansion that Sue Gauger recommended.

. . . .

... [B]ut there is a decree here as modified by Ms. Gauger's letter and that becomes the decree which Craig is to follow.

But there's several things I think that you need to remember Leslie. Number one, I'd say—I don't know which one of you is totally responsible for this, but between the two of you, I think you've had a very serious adverse impact on your children and I'm sure Craig blames it on Leslie and Leslie blames it on Craig. . . . .

I don't think this case, today at least, didn't really—really wasn't concerned with the best interests of the children. It didn't have much to do with this hearing. I think that Craig's interest is in making life as easy for him as possible. He doesn't want to tell his daughters that they need to go visit their mother. At least that's my read on it. He doesn't want to have to come down on them, direct them that they need to go see their mother. I question how much even he encourages them to go see their mother. He wants to take the easy way out and let them decide what they want to do.

On the other hand, I think Leslie's here primarily because of ego. She thinks she isn't getting enough time with her children. She thinks she's not being treated fairly. All the calls she made to Sue Gauger indicated that she is unhappy with the way things are developing, doesn't think her interests are being properly addressed. And I think Leslie needs to understand that she's already estranged [her younger son] by these demands and maybe [her older daughter]. At least Sue Gauger's letter indicated it was only [the younger daughter] that really wanted the visitation with her mother. . . . .

. . . . You people have to figure out some way ... to cooperate, and you need to consider the best interests of the children. That's what we're supposed to be concerned about. But I didn't see much of it in this proceeding.

1. Apparently communication between Craig and Leslie was extremely difficult and at a point in early 2010 a no contact order was in place based on Craig's complaint of receiving harassing telephone calls from Leslie.

Be that as it may, I think that suggests, Leslie, that if [your older daughter] doesn't want to come, you need to respect that. And if it gets to the point that [your younger daughter] doesn't want to come, you need to give that some consideration. Someway, somehow, there has to be some flexibility and cooperation between the parties. But I don't think I have any choice in this matter except to say you've got to follow the decree, and I guess if it's going to require that, I guess you'll have to file a modification.

Other than that, I'd simply say to Leslie that you won, in effect, but don't lose the hearts of your children just for a moral victory or something to massage your ego, and I think you need to take that into consideration. That will be the order of the Court.

On December 1, 2010, the district court filed an Order Regarding Contempt saying:

THE COURT FINDS that Petitioner was aware of the Consent Modification Order entered previously as evidenced by his signature on said order. The Court further finds that Petitioner failed to comply with said Order by not following the visitation schedule accordingly.

IT IS THEREFORE ORDERED that Petitioner Craig Douglas Stephen is found in contempt of the Court's Order entered on or about October 13, 2009. The Court further states that Petitioner is to follow the Order and Decree regarding visitation.

Later the court also ordered Craig to pay Leslie $750 in attorney fees as a result of the contempt action. Craig filed a Notice of Appeal from the contempt ruling.[2]

■ **II. FORM OF APPEAL.** This case was filed as a direct appeal, when it should have been filed as a petition for a writ of certiorari. *See* Iowa Code § 665.11 (2009). However, the filing of an appeal rather than petitioning for a writ of certiorari is not necessarily fatal to our review. *Giles v. State,* 511 N.W.2d 622, 625 n. 2 (Iowa 1994). Iowa Rule of Appellate Procedure 6.108 provides in part:

If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested. The court may treat the papers upon which the action was initiated as seeking the proper form of review and, in appropriate cases, may order the parties to file jurisdictional statements.

Under the rule above, we treat the notice of appeal filed by Craig to be, as it should have been pursuant to section 665.11, a petition for the issuance of a writ of certiorari. We grant the writ and proceed.

■ **III. SCOPE OF REVIEW.** An appeal from a finding of contempt is limited to determining whether the district court acted illegally or without jurisdiction. *Madyun v. Iowa Dist. Ct.,* 544 N.W.2d 441, 443 (Iowa 1996); *Rater v. Iowa Dist. Ct.,* 548 N.W.2d 588, 590 (Iowa Ct.App.1996). Review is not de novo but at law. *Madyun,* 544 N.W.2d at 443. Because of the quasi-criminal nature of the proceedings, a finding of contempt must be established by proof beyond a reasonable doubt. *In re Marriage of Schradle,* 462 N.W.2d 705, 709 (Iowa Ct.App.1990). "Substantial evidence is such evidence as could convince a rational trier of fact the alleged contemnor is

---

**2.** Leslie did not file an appellate brief.

guilty of contempt beyond a reasonable doubt." *Rater*, 548 N.W.2d at 590.

**IV. CONTEMPT.** Although not raised by the parties, we address whether the district court acted illegally or without jurisdiction in finding Craig guilty of contempt. A party cannot be found in contempt for disobeying a court order if the court had no authority to issue the order. *Critelli v. Tidrick*, 244 Iowa 462, 468, 56 N.W.2d 159, 163 (1952). The court found Craig violated the October 13, 2009 Order of Modification. In that order the court ordered that Leslie would be entitled to visitation every Wednesday evening until 9 p.m., the second weekend of the month from Friday at 5 p.m. until Sunday at 9 p.m. and the fourth Sunday of the month from 8:30 a.m. until 8:30 p.m. The order then went on to provide the visitation would increase at the discretion of Gauger or her designee, in increments solely determined by Gauger.

At the contempt hearing, the testimony from all parties established Leslie was provided the visitation of every Wednesday night, the second weekend, and the fourth

Sunday. Leslie's complaint was that she was not provided the increased visitation after Gauger sent the parties a letter on November 20, 2009, providing the two girls should be provided visitation with Leslie every other weekend and every other holiday. Gauger's recommended visitation increase was never presented to or approved by the court. The court, in the October 13th order, delegated to Gauger its power to modify the visitation schedule if and when Gauger decided it was in the children's best interests. We find this delegation of judicial power invalid.

It is well established that the district court is the only entity that can modify a custody or visitation order, subject to the review of the appellate courts. *In re Marriage of Brown*, 778 N.W.2d 47, 54 (Iowa Ct.App.2009); *see also* Iowa Code § 598.41 (providing the factors the *court* should considering in awarding custody and visitation rights). This obligation to modify a decree cannot be delegated to any person or entity because that person or entity has no jurisdiction to render such a decision.[3] The legislature has granted to

---

3. The following states agree the court may not delegate its judicial power to determine visitation or custody arrangements to the parties or a third party: *Pratt v. Pratt*, 56 So.3d 638, 644 (Ala.Civ.App.2010) ("We also reiterate that [t]he trial court is entrusted to balance the rights of the parents with the child's best interests to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case. That judicial function may not be delegated to a third party." (internal citations omitted)); *In re Marriage of Matthews*, 101 Cal.App.3d 811, 161 Cal.Rptr. 879, 882 (1980) (holding as invalid the provision in the court order authorizing a third party to alter the visitation scheduled in any way she deemed reasonable and necessary); *Larocka v. Larocka*, 43 So.3d 911, 912–13 (Fla.Dist.Ct.App.2010) (holding it is the responsibility of the court to establish the visitation schedule between the mother and child and may not delegate that responsibility

to a counselor); *In re Paternity of A.R.R.*, 634 N.E.2d 786, 789 (Ind.Ct.App.1994) (finding the court impermissibly endowed an executive agency with the judicial power to control the frequency of the visitation); *Meyr v. Meyr*, 195 Md.App. 524, 7 A.3d 125, 138 (Md.Ct. Spec.App.2010) ("[A] court may not delegate to other individuals decisions regarding child visitation and custody."); *In re Marriage of Young*, 370 N.W.2d 57, 65–66 (Minn.Ct.App. 1985) (holding that the court can rely on an expert's opinion, but the court must make the ultimate decision on visitation rights); *Walters v. Walters*, 12 Neb.App. 340, 673 N.W.2d 585, 592 (2004) ("[T]he courts have held that the authority to determine the custody and visitation of a minor child cannot be delegated to a third party, because it is a judicial function"); *In re Marriage of Kilpatrick*, 198 P.3d 406, 410 (Okla.Civ.App.2008) (striking the portion of the court's order that provided the parenting coordinator's recommendations

the court the responsibility to make an impartial and independent determination as to what is in the best interests of the child, and this decision cannot be controlled by the agreement or stipulation of the parties. *See Walters v. Walters,* 12 Neb.App. 340, 673 N.W.2d 585, 592 (2004). While the district court could seek and consider the therapist's recommendations only the district court could modify the decree after the parties had the the right to be heard.

Granger's letter recommending additional visitation was not a court order. Craig therefore cannot be held in contempt for failing to abide by the expanded schedule provided in the letter. In addition, the undisputed evidence at the contempt hearing was that Leslie was provided the visitation the court ordered in the October 13, 2009 modification, thus substantial evidence does not support finding Craig in contempt.

**WRIT SUSTAINED.**

should be observed as orders of the court because it constituted an improper delegation of judicial power and is contrary to the parent's due process rights); *Chiappone v. Chiappone,* 984 A.2d 32, 39 (R.I.2009) ("The issues of custody and visitation fall squarely within the realm of judicial responsibility and may not be delegated to a therapist, no matter how qualified or well-intentioned the therapist may be.").