# IN THE COURT OF APPEALS OF IOWA

No. 14-1701
Filed October 28, 2015

IN RE THE MARRIAGE OF ANGELA J. RETTERATH
AND CHAD M. RETTERATH

Upon the Petition of
ANGELA J. RETTERATH, n/k/a ANGELA J. NEUMAN,
        Petitioner-Appellant,

And Concerning
CHAD M. RETTERATH,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Mitchell County, Christopher C.

Foy, Judge.


        A mother appeals from a district court's modification of a dissolution

decree. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Richard N. Tompkins Jr. of Tompkins Law Office, Mason City, for

appellant.

        Judith M. O'Donohoe of Elwood, O'Donohoe, Braun, & White, L.L.P.,

Charles City, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

Angela Neuman appeals a district court order modifying a dissolution decree to place physical care of the children with her ex-husband, Chad Retterath.

### I.  Background Facts and Proceedings

Angela and Chad married in 2003, had two children, and divorced in 2010. Under the dissolution decree, Angela received physical care of the children, subject to liberal visitation with Chad.

In the ensuing years, Angela repeatedly alleged that Chad and others sexually abused the children.  The State filed a child-in-need-of-assistance action in juvenile court.  Chad subsequently filed a petition to modify physical care in the district court.

The juvenile court adjudicated the children in need of assistance (CINA) and transferred their custody to the Department of Human Services for placement in foster care.  Meanwhile, the department investigated the allegations of abuse.  No founded reports of child abuse were issued against Chad.[1]

The juvenile court later determined one of the children's "recollections" of sexual abuse were "a result [of] what he . . . interpreted as what his mother told him happened to him" and he had "yet to relay one single detail of abuse that he actually remember[ed]."  The court further states, "every treatment professional involved in this case agrees that the boys do not exhibit the behaviors one would expect to see in abuse victims."  The court ordered the department to transition

---

[1] The department issued one founded report, with the perpetrator designated as "unknown."

the children to Chad's home and granted the district court concurrent jurisdiction to address Chad's modification petition. In a subsequent permanency order, the court transferred "sole custody" of the children to Chad, ordered visits with Angela to be supervised, and granted the department discretion to determine the "time, place, frequency, circumstances, nature and duration of visits."

In time, the district court held an evidentiary hearing on Chad's modification petition. Following the hearing, the court made the following pertinent findings:

> Like any parent, Chad is far from perfect. However, Chad has made a sincere effort to improve his parenting over the course of the CINA proceedings and has shown he can provide a safe, nurturing home for the boys. In contrast, Angela is unwilling to acknowledge her responsibility for the behavioral and emotional issues that her sons face. . . . The social workers who have assisted the family uniformly believe that it is in the best interests of the boys to transfer physical care to Chad.

The court found Chad's testimony "more credible," reasoning that Angela's willingness to "pursue her fantastical and 'over-the-top' accusations of sexual abuse against Chad . . . undermine[d] her general credibility." The court transferred physical care of the children from Angela to Chad, required all visitation between Angela and the children to be supervised, and vested discretion with Chad to determine the parameters of visitation.

Angela filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) for enlarged findings and conclusions, challenging the delegation to Chad of discretion to conduct visits. The district court denied the motion. This appeal followed.

## II. Analysis

### A. Modification of Physical Care

A party requesting modification must prove (1) a substantial and material change in circumstances that is more or less permanent and affects the children's welfare and (2) an ability to provide superior care. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). On our de novo review, we are convinced Chad satisfied this heavy burden.

Angela leveled horrific allegations of sexual abuse against Chad and others, some bordering on the absurd. The department and law enforcement authorities investigated the allegations and found scant support for them. While Angela maintains she simply conveyed what the children reported, the older child called this assertion into question when he told his therapist and foster parents that Angela prompted him to "disclose" the abuse and made him "lie." *See, e.g., In re Marriage of McCord*, No. 03-0497, 2003 WL 23219961, at *6 (Iowa Ct. App. Nov. 26, 2003) (stating mother was correct in giving credence to initial statement of daughter but mother's credibility was adversely affected by the fact the child later gave inconsistent statements and said mother told her to say the father was the perpetrator).

The children's reactions to their father also raised doubts about Angela's veracity. Visitation supervisors reported the boys were happy to see and interact with him during supervised visits. The boys' therapist testified their behaviors around their father were not typical of sexually abused children.

Angela continued to malign Chad even after the sex abuse allegations failed to gain traction. For example, she accused him of drug abuse, an accusation which was quickly refuted.

Angela's allegations harmed the children. As a result of the allegations, the children were moved in and out of three foster homes, including a relative's home. The second set of foster parents asked to have the placement curtailed because they feared Angela would make unsubstantiated allegations of abuse against them that would jeopardize their foster care license.

In addition to the instability generated by the repeated moves, the children's behaviors changed. The older child evinced "serious perception and thinking" issues; the younger child sometimes had "lengthy tantrums" in Angela's presence. *See In re Marriage of Winnike*, 497 N.W.2d 170, 173-74 (Iowa Ct. App. 1992) (noting mother was "strongly committed to pursuing her allegations of sexual abuse. However, she seem[ed] oblivious to any harm her public campaign against [the father] may have on her daughter"); *see also, e.g., McCord*, 2003 WL 23219961, at *8 (noting child "suffered serious emotional damage as a result of her mother's posturing").

Meanwhile, Chad did his best to address the allegations and nurture the children. He cooperated with the multiple investigations, preserved the children's relationship with Angela's family members despite Angela's estrangement from them, and engaged appropriately with the children during visits and after the juvenile court granted him sole custody. *See, e.g., In re Marriage of Gooley*, No. 05-0551, 2008 WL 5412287, at *3 (noting father cooperated with investigations,

interacted well with his daughter and provided a suitable and stable home for his daughter).

We conclude Angela's sustained attacks against Chad and her involvement of the children in those attacks constituted a material and substantial change of circumstances affecting the welfare of the children. *See Winnike*, 497 N.W.2d at 174 ("In determining custody we can give great weight to a parent's attempt to alienate a child from her other parent if evidence establishes the actions will adversely affect a minor child."); *see also, e.g., Gooley*, 2008 WL 5412287, at *3 (affirming modification of physical care where mother "systematically attempted to destroy the relationship between father and daughter" by making "numerous allegations of abuse to the DHS," subjecting child "to at least four genital examinations . . . with none finding there was conclusive evidence of sexual abuse," and taking other actions against the best interests of the child). We further conclude Chad showed himself to be the superior caretaker notwithstanding Angela's historic role as primary caretaker. We affirm the district court's modification of the physical care provision in the dissolution decree.

### B. Visitation

The district court entered a visitation order as follows:

So long as the CINA cases involving [the children] remain open, the Department of Human Services shall have sole discretion to establish the time, place, frequency, circumstances, nature, and duration of any communication or visitation between [Angela] and the children. If the parties are unable to agree on the specifics of visitation once the CINA cases involving [the children] are closed, then [Chad] shall have sole discretion to establish the time, place,

frequency, circumstances, nature, and duration of any communication or visitation between [Angela] and the children.[2]

Angela argues the court (1) should not have required the visits to be supervised and (2) should not have granted Chad discretion to control visitation.

On the first point—the requirement of supervision—we agree with and find evidentiary support for the following analysis by the district court:

> In this case, the Court is satisfied that the imposition of certain restrictions on the right of Angela to visitation with her children is necessary to ensure their safety and welfare. During supervised interactions with H over the past two years, Angela has confronted her son many times about what she perceived as his lack of honesty. She continued to pursue these confrontations, even after being told many times previously to avoid arguing with H about his honesty due to the negative effect these arguments have on him. Given the poor judgment exhibited by Angela in supervised settings, the Court does not believe that she could maintain appropriate boundaries in dealing with the boys if her visitation was not supervised. The Court also believes allowing Angela unrestricted visitation at the present time would soon lead to additional false accusations against Chad.

We affirm the district court's visitation order to the extent it required visits between Angela and the children to be supervised.

On the second point—delegation of supervision authority to Chad— Chad's attorney conceded error at oral arguments. *See In re Marriage of Stephens*, 810 N.W.2d 523, 530 (Iowa Ct. App. 2012); *see also, e.g., Schleis v. Keiner*, No. 14-1258, 2015 WL 2089690, at *2 n.2 (Iowa Ct. App. May 6, 2015); *In re Marriage of Schmidt*, No. 13-0675, 2014 WL 2432549, at *7-8 (Iowa Ct.

---

[2] Our record does not reveal whether and when the CINA case closed. For purposes of this opinion, we will assume the CINA is closed and we will address that portion of the visitation order addressing post-closure visitation. *See A.B. v. M.B.*, 569 N.W.2d 103, 104-05 (Iowa 1997) (stating "[c]ustody or visitation orders entered by a court granted 'concurrent jurisdiction' . . . are only determinative of the rights of the parents inter se if and when the juvenile court's placement of the children during their CINA status has been rendered of no further effect by orders of the juvenile court").

App. May 29, 2014); *In re Marriage of Vidal*, No. 09-1608, 2010 WL 3324939, at *7 (Iowa Ct. App. Aug. 25, 2010). As Chad's attorney correctly pointed out, a district court may not delegate its authority to determine the parameters of visitation to a third party. *See Stephens*, 810 N.W.2d at 530 ("It is well established that the district court is the only entity that can modify a custody or visitation order, subject to the review of the appellate courts. This obligation to modify a decree cannot be delegated to any person or entity because that person or entity has no jurisdiction to render such a decision." (citations omitted)). Delegation of visitation parameters to the opposing party is of particular concern. As the Iowa Supreme Court stated, a district court should not

> make the right of visitation contingent upon an invitation from the party having the custody of the child, or require the consent of one parent for the other to visit the child, . . . thereby leaving the privilege of visitation entirely to the discretion of the party having the child in custody.

*Smith v. Smith*, 142 N.W.2d 421, 425 (Iowa 1966) (citation omitted).

In light of this authority, we reverse the portion of the district court's visitation order delegating supervisory and other authority over visitation to Chad and remand for entry of an order by the district court assigning a visitation supervisor other than one denominated by Chad and defining the parameters of visitation.

### III. Appellate Attorney Fees

Angela requests appellate attorney's fees. An award rests in our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Because Angela did not prevail on the physical care issue, we decline her request.

Costs on appeal are taxed equally to the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**