Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/18/2020 09:24 AM CDT

Meaghann Shaw Weaver, appellee, v.
John Glen Weaver, appellant.
___ N.W.2d ___

Filed August 11, 2020.    No. A-19-1058.

1. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.
2. **Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.
3. **Modification of Decree: Child Custody: Proof.** In a child custody modification case, first, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.
4. **Divorce: Judgments: Property Settlement Agreements: Final Orders.** A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself.
5. **Divorce: Intent.** If the contents of a dissolution decree are unambiguous, the decree is not subject to interpretation and construction, and the intention of the parties must be determined from the contents of the decree.
6. **Divorce.** If the contents of a dissolution decree are unambiguous, the effect of the decree must be declared in the light of the literal meaning of the language used.
7. **Constitutional Law: Foreign Judgments: States.** The Full Faith and Credit Clause requires states to give the same effect to a judgment

    in the forum state that it has in the state where the court rendered the judgment.

8. **Stipulations: Parties: Trial: Courts.** Stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy.

9. **Stipulations: Parties: Courts: Good Cause.** Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo.

10. **Stipulations: Parent and Child.** Disposition of a question pertaining to a child's best interests is not governed exclusively by a parental stipulation.

11. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Reversed and remanded with directions.

John A. Kinney and Jill M. Mason, of Kinney Mason, P.C., L.L.O., for appellant.

Virginia A. Albers, of Slowiaczek Albers, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Riedmann and Arterburn, Judges.

Riedmann, Judge.

## INTRODUCTION

John Glen Weaver (Glen) filed a complaint to modify the judgment of absolute divorce entered by the District of Columbia Superior Court, which complaint he had registered in the district court for Douglas County, Nebraska. Attached to the decree was a separation and property settlement agreement signed by the parties which gave Meaghann Shaw Weaver physical custody of their minor child. Although the district court found that additional time with Glen would be in the

best interests of the child, the court found no material change in circumstances had occurred; thus, it declined to modify the decree. We conclude that the agreement allowed modification of custody without a material change in circumstances. Therefore, because the court found modification would be in the child's best interests, we reverse the order and remand the cause for the district court to reconsider the relief sought by Glen.

## BACKGROUND

Glen and Meaghann were married in 2004 and had a child in 2015. They separated shortly after their child was born, and Meaghann later filed to dissolve the marriage. The parties were living in Washington, D.C., at the time, and they were able to reach an agreement on all aspects of their divorce, including custody of the child, parenting time, and child support. Thus, the District of Columbia Superior Court entered a decree in May 2016. The court incorporated the parties' agreement into the decree and dissolved the marriage.

Pursuant to the agreement, the parties share joint legal custody of the child, but physical custody was placed with Meaghann subject to Glen's parenting time. The agreement contemplated that both parties would move to Omaha, Nebraska, and set forth increased parenting time for Glen upon relocation to Omaha. The parties moved to Omaha in the summer of 2016. At the time of the modification hearing, Glen had parenting time with the child every other weekend from Friday evening through Sunday evening and every other Wednesday from 4:30 to 6:30 p.m.

Paragraph 4.2 of the agreement is entitled "Modification of Physical Custody" and states:

Upon a material and significant change in circumstance of either party, or in the needs or interests of [the child], either party may request a modification to the physical custody of [the child]. Upon such a request, the parties will discuss the modification in good faith and attempt to agree upon a resolution that is in the best interests of [the

child]. If either party believes the terms of this Agreement related to custody are not in [the child's] best interest at a future time, the parties may discuss negotiation of a modification of custody in good faith and attempt to agree upon a resolution that is in the best interests of [the child]. If the parties are unable to agree, they shall follow the protocols for Dispute Resolution Regarding Child Custody set forth herein.

The protocols for "Dispute Resolution Regarding Child Custody" are set forth in paragraph 4.4, which provides:

The parties agree that if a dispute arises in the future about any important parenting issue and they are unable to resolve the dispute through several discussions on their own, they agree to meet with a mutually agreed upon mediator or facilitator, or they will meet with an expert in the field of the dispute (physician, teacher, etc.) to gain more information and advice. Parents share a commitment to resolve any future parenting disagreements via an alternat[ive] dispute resolution process that remains outside of Court. In the event the parties are unable to reach an agreement through this dispute resolution process, including agreements related to modifications in the physical custody schedule as provided in Paragraph 4.1 and 4.2 *supra*, either party may petition a court of competent jurisdiction for relief, provided however that any court of competent jurisdiction shall apply the then-governing legal standard to such a request for modification of custody.

In February 2017, Glen filed a petition for registration of the foreign decree in the Douglas County District Court. The court entered an order of confirmation in May. In December, Glen filed the operative complaint to modify the decree, asking the court to award him joint physical custody of the child, allocate holidays and vacation time, and recalculate child support.

A modification hearing was held in April 2019, and the evidence established that Glen is a lieutenant colonel in the U.S.

Air Force and is currently stationed at Offutt Air Force Base. He owns a home in Omaha, where the child has her own bedroom, and his home is close to a park and a school. Glen was fairly certain he would not be relocated to another city in the 4 months that he has remaining in the military before he is retirement eligible and testified that thereafter, if he were asked to move, he would simply retire from the military.

Glen is allotted no specific holidays or vacation time in the agreement, and he testified that he requested additional parenting time on at least 50 occasions during the 2 years preceding the hearing, but his requests were denied. He also explained that although the agreement allows him to see the child for additional parenting time while she is at daycare, he is precluded from exercising that time in Meaghann's home, and currently, Meaghann's mother provides full-time daycare for the child at Meaghann's home while Meaghann is working. The child informed him that she is attending a preschool program two mornings per week, so he has attended an event at her school on one occasion. Otherwise, he has been unaware of the child's daycare arrangements, other than Meaghann's telling him that the child is "in a safe place."

Glen acknowledged that he agreed to the current custody and parenting time arrangement but explained that the child was an infant when the agreement was created and Meaghann was nursing her. Consequently, his priority was that the child be with Meaghann during that time. He testified that he never contemplated having so little time with the child when she was at daycare and explained that he wants to be an equal parent with equal time with the child, including alternating holidays and vacation time. He proposed a modified decree awarding the parties joint physical custody with a graduated parenting plan so that he has equal time, under a week-on-week-off schedule, by the time the child is 6 years old.

Meaghann works as a pediatric palliative and hospice physician. She testified that she has no objection to Glen's seeing their child as long as it is conducive to the child's development

and schedule. She explained that the current schedule is working well for the child and that she is thriving. Nevertheless, she offered to give Glen additional parenting time, while still allowing her to retain physical custody.

In an order following the hearing, the district court found that although it would be in the child's best interests to have more time with Glen, there was insufficient evidence of a material change in circumstances which would warrant modification of the decree. The court therefore denied the complaint to modify. Thereafter, Glen filed a motion to alter or amend, which was denied. Glen now appeals to this court.

## ASSIGNMENTS OF ERROR

Glen assigns that (1) the district court erred in determining that he was required to plead and prove a material change in circumstances, (2) the court erred in determining that he failed to prove a substantial and material change in circumstances had taken place not within the contemplation of the parties at the time of the original judgment, (3) the court erred in failing to determine child custody modifications should be determined on the basis of the best interests of minor children and should have found that the original judgment violated Nebraska's Parenting Act, and (4) administrative dismissal of the first complaint to modify was not a decision on the merits.

## STANDARD OF REVIEW

[1] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016).

## ANALYSIS

[2,3] Glen first argues that the district court erred in finding that he was required to plead and prove a material change in circumstances in order to modify custody. Ordinarily, custody of a minor child will not be modified unless there has been a

material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Id.* First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id*. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id*.

The parties' agreement, which was incorporated into the dissolution decree, addresses custody modification. Paragraph 4.2 states that upon a material and significant change in circumstance of either party, *or* in the needs or interests of the child, either party may request modification of physical custody. What follows in the remainder of paragraph 4.2 and paragraph 4.4 is the procedure for modifying physical custody. If those efforts are unsuccessful, the parties may turn to the court.

[4-6] A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Carlson v. Carlson*, 299 Neb. 526, 909 N.W.2d 351 (2018). If the contents of a dissolution decree are unambiguous, the decree is not subject to interpretation and construction, and the intention of the parties must be determined from the contents of the decree. *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014). In such a case, the effect of the decree must be declared in the light of the literal meaning of the language used. *Id*. Based on the plain language of paragraph 4.2, we conclude that the parties agreed that upon the request of either Glen or Meaghann, modification of physical custody was permissible without a material change in circumstances if doing so would be in the best interests of the child.

Glen argues on appeal that because the parties agreed to allow custody modification based solely on the best interests of the child, the district court erred in requiring that he prove

a material change in circumstances. We recognize that he did not specifically raise this argument in the district court, and generally, issues raised for the first time on appeal will not be considered. See *First Express Servs. Group v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013). However, Meaghann does not claim that Glen waived this issue and, by contesting his request for modification, she was asking that the terms of the decree be enforced.

[7] Regardless of whether the specific language of the agreement was raised in the district court, both state and federal law require that we give full faith and credit to the decree, including the parties' agreement. The Full Faith and Credit Clause of U.S. Const. art. IV, § 1, requires states to give the same effect to a judgment in the forum state that it has in the state where the court rendered the judgment. *In re Adoption of Jaelyn B.*, 293 Neb. 917, 883 N.W.2d 22 (2016). Acting under its authority in art. IV, § 1, Congress enacted 28 U.S.C. § 1738A (2012) to ensure states give full faith and credit to other states' custody orders. See *Gjertsen v. Haar*, 347 P.3d 1117 (Wyo. 2015). Section 1738A(a) provides: "The appropriate authorities of every State shall enforce *according to its terms*, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State." (Emphasis supplied.)

Likewise, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2016 & Cum. Supp. 2018), provides that a court of this state shall accord full faith and credit to an order issued by another state and consistent with the UCCJEA which enforces a child custody determination by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so under §§ 43-1238 to 43-1247. See § 43-1260. In addition, a court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in

substantial conformity with the UCCJEA or the determination was made under factual circumstances meeting the jurisdictional standards of the UCCJEA and the determination has not been modified in accordance with the UCCJEA. § 43-1250(a). There is no dispute that the trial court in Washington, D.C., properly exercised jurisdiction in conformity with the UCCJEA at the time the decree was entered or that Nebraska now qualifies as the child's home state under the UCCJEA. See §§ 43-1227 and 43-1238. Therefore, the decree and agreement must be enforced according to their terms.

In a case similar to the case at issue, the parties in *Gjertsen v. Haar, supra*, reached an agreement regarding custody of their child, visitation, and child support, which was incorporated into a judgment in a California court while California was the child's home state. The stipulated judgment recognized that the father and child had moved to Wyoming and that the mother planned to move there as well; it set forth the mother's visitation upon her relocation. The agreement also provided that the mother's visitation schedule "'may be adjusted on request by either party, without the necessity of proving a change of circumstances, as is in the best interests of [the child] as the Court, in its discretion, may believe to be proper.'" *Id*. at 1123.

In that case, the father registered the judgment in Wyoming; thereafter, the mother filed a petition to modify the California judgment, asserting that there had been material changes in circumstances since the California judgment was entered and seeking modification of custody, child support, and visitation. Following trial, the court found that the mother was required to establish a material change of circumstances in order to warrant a change in custody or visitation but that she had not met that burden. The trial court, therefore, denied her modification motion, although it also indicated a change in the terms of visitation may be in the child's best interests.

On appeal, the Wyoming Supreme Court observed that Wyoming law generally requires proof of a material change

in circumstances in order to modify an order concerning child custody or visitation. *Gjertsen v. Haar*, 347 P.3d 1117 (Wyo. 2015). It noted that the California judgment, however, contained a provision allowing modification upon a showing that it is in the child's best interests, without requiring proof of a material change of circumstances. *Id*. The mother argued on appeal that the trial court erred in failing to give full faith and credit to this provision of the California judgment and, instead, requiring her to establish a material change of circumstances before it would consider modifying visitation. The father asserted that the mother waived this argument by failing to present it to the district court, but the Supreme Court observed that it was the father who registered the judgment in Wyoming and that in response to the mother's petition, he repeatedly asked the trial court to enforce the terms of the California judgment. *Id*.

Further, the Supreme Court found that the significance of the provision which allowed changes in visitation in the best interests of the child without a showing of material change of circumstances was clear. *Id*. It cited the Full Faith and Credit Clause of the federal Constitution and 28 U.S.C. § 1738A, as well as the UCCJEA of Wyoming. *Gjertsen v. Haar, supra*. The court noted that under the Supremacy Clause, U.S. Const. art. VI, cl. 2, federal law preempts state law in proper cases, and in that case, the Wyoming Supreme Court found that federal law required it to give full faith and credit to the California judgment as long as it was in effect. *Gjertsen v. Haar, supra*. The Supreme Court determined that pursuant to 28 U.S.C. § 1738A, the California judgment had to be enforced according to its terms, and that those terms, which were stipulated by the parties and approved by the California court, state that the mother's visitation rights may be altered upon a showing that it is in the best interests of the child, even though no material change in circumstances has occurred.

Likewise here, we must enforce the agreement according to its terms, which permitted a modification of custody

without showing a material change in circumstances. Pursuant to paragraph 4.4 of the agreement, the court was to apply the "then-governing legal standard to such a request for modification of custody."

[8-10] As previously explained, generally a material change in circumstances is required before a court of this state can modify custody. See *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). However, as we found above, the parties agreed to allow modification of custody based solely on the best interests of the child as an alternative to showing a material change in circumstances. In *Walters v. Walters*, 12 Neb. App. 340, 673 N.W.2d 585 (2004), this court recognized that stipulations voluntarily entered into between the parties to a cause or their attorneys, for the government of their conduct and the control of their rights during the trial or progress of the cause, will be respected and enforced by the courts, where such stipulations are not contrary to good morals or sound public policy. Courts will enforce valid stipulations unless some good cause is shown for declining to do so, especially where the stipulations have been acted upon so that the parties could not be placed in status quo. *Id.* We also recognized, however, that disposition of a question pertaining to a child's best interests is not governed exclusively by a parental stipulation. *Id*.

In *Walters v. Walters, supra*, the parties stipulated in their divorce decree that the decree with respect to child visitation would be subject to modification upon the application of either party without a showing of a material change in circumstances. This court noted that although whether there is a material change in circumstances is one factor courts normally examine when modifying child visitation, it is not the only factor; nor is it the most important factor. *Id*. We reiterated that it is the children's best interests which are paramount to a decision to modify. *Id*. We found that agreeing to allow visitation to be modified without showing a material change in circumstances potentially enhances the visitation rights of both parties by reducing the potential for litigation over visitations, and it

makes modification dependent solely on the best interests of the children, not on the nuances of the parties' circumstances. *Id*.

We also determined that the stipulation and the decree did not contradict the statute controlling child visitation, as the statute looks to the best interests of the child as being paramount in decisions of child visitation and does not require a material change in circumstances. *Walters v. Walters, supra.* See Neb. Rev. Stat. § 42-364(2) (Cum. Supp. 2018). We therefore concluded that the parties' stipulation, which was expressly made part of the decree, was not against good morals or public policy, and thus, the trial court abused its discretion in denying modification based on a finding that there was no material change in circumstances. See *Walters v. Walters, supra*.

The same analysis is applicable with regard to custody modification. As with visitation, the children's best interests are also paramount to a custody award or modification. Section 42-364(2) also governs custody awards and states that custody shall be determined on the basis of the best interests of the child. As cited above, a party who requests modification of custody must show that doing so would be in the child's best interests. See *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). Thus, the "then-governing legal standard" which would apply "to such a request for modification" referenced in Glen and Meaghann's agreement would refer to the standard set forth in *Walters v. Walters*, 12 Neb. App. 340, 673 N.W.2d 585 (2004), which enforces agreements between parties to allow modification of custody without requiring proof of a material change in circumstances if modification is in the best interests of the child. The district court therefore abused its discretion in requiring proof of a material change in circumstance. Because the district court found that it would be in the child's best interests to have more time with Glen, we reverse, and remand for the district court to reconsider the relief sought by Glen in accordance with the best interests of the child.

[11] Given the outcome of this assignment of error, we need not address Glen's remaining assigned errors. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Applied Underwriters v. S.E.B. Servs. of New York*, 297 Neb. 246, 898 N.W.2d 366 (2017).

## CONCLUSION

Because the custody agreement incorporated into the parties' dissolution decree stipulated that modification of custody could be sought based solely on the best interests of the child, the district court abused its discretion in requiring that Glen prove a material change in circumstances. We therefore reverse the court's order and remand the cause with directions consistent with this opinion.

Reversed and remanded with directions.