### In re the MARRIAGE OF Nan Gillies LOWER and Thomas Joseph Lower.

### Upon the Petition of Nan Gillies Lower, Appellant, and concerning Thomas Joseph Lower, Appellee.

### No. 60528.

Supreme Court of Iowa.

Sept. 20, 1978.

W. Don Brittin, Jr., of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellant.

Thomas P. Hyland of Hyland, Laden & Pearson, P. C., Des Moines, for appellee.

REES, Justice.

This is an appeal from the order, judgment and decree of the trial court denying the application of Nan Gillies Lower, the custodial parent of Michael, the child of petitioner and respondent, to decrease appellee's visitation rights and granting respondent's application for an order restraining the petitioner from removing the child from the state of Iowa. We reverse and remand for the entry of orders consistent with this opinion.

The marriage of petitioner and respondent was dissolved by the Polk County District Court on September 10, 1975, after a marriage relationship of a little more than seven years. Custody of the only child of the parties (Michael), who was then six years old, was placed by the decree of dissolution in the petitioner, subject to respondent's right to visit Michael on alternate weekends and for several weeks in the summer. The petitioner was also awarded $30 per week child support.

At the time of the initial decree, respondent was a student at the Des Moines College of Osteopathic Medicine, graduating therefrom in 1975. He moved to Grinnell to establish himself in the practice of medicine in the summer of 1976 and remarried in September of the same year.

At the time of the entry of the decree, petitioner was employed by International Business Machines Corporation (IBM) as a marketing representative in the Des Moines

area. She was still so employed at the time of the February 17, 1977 hearing on her application and the respondent's resistance. In her capacity as a marketing representative petitioner was charged with the responsibility of working with the financial community in Des Moines—banks, savings and loan associations, etcetera. In February of 1977 she was earning approximately $1800 per month and was guaranteed a base salary of 80 percent of that figure, approximately $1400 per month, or an annual income of approximately $17,000 per year. She was also entitled to earn commissions on her own sales. Her total salary in 1975, including commissions, was about $22,000, but due to advantageous market conditions in 1976 she earned $41,000, more or less, including commissions.

Early in 1977 petitioner's supervisors, having concluded she had reached the point in her career when she was ready to assume additional responsibility, offered her a promotion to a "staff position" with the regional office of IBM in Minneapolis. The record indicates that staff positions are prerequisite to management employment with IBM, that there were no such staff positions available in Des Moines or in the state of Iowa, and that the proffered move to Minneapolis indicated petitioner might be placed in a management position in the future. In connection with the promotion to the staff position in Minneapolis, petitioner was offered a guaranteed monthly salary of $2,160, or about $26,000 per year, an increase of almost 50 percent over her guaranteed income of $1400 per month as a marketing representative in Des Moines. Petitioner testified that the move from marketing representative to a staff position would afford her more financial security, immediately and over the long term, and that the potential for moving into management of the company offers the opportunity for a far greater salary and benefits than her earnings in Des Moines as a marketing representative. She further testified that in addition to the increased financial security, the staff position in Minneapolis would require her to spend fewer nights away from home in connection with business, al-

lowing her to be with the minor child for greater periods of time.

After the offer for the staff position in Minneapolis was made to petitioner, she made an extensive investigation of the Minneapolis suburb of Edina, where she contemplated moving, with respect to housing, opportunities for extra curricular activities for Michael, church affiliations, the availability of daycare centers and babysitting services and transportation from Minneapolis to Grinnell. Following her extensive investigation, she made an offer to purchase a residence in one of the more desirable areas of Edina. She testified at length as to the school, church and community environment in which she and the child would live in Edina.

Following the extensive evidentiary hearing, the trial court found material changes of circumstances to exist, and specifically found: (1) that the proposed departure from the state of Iowa afforded little, if any, advantage to the child; (2) that the petitioner and child leaving the state would necessarily diminish visitation rights of the respondent that should not be disturbed and might tend to destroy the father-son relationship; (3) that the move to Minneapolis advantaged the petitioner primarily; (4) that the proposed move would tend to uproot the child's established environment, coupled with the factor that the child faced two or three hours of babysitters daily; and (5) respondent now has an established practice and is able to provide the child with a father-mother atmosphere daily, even though through a step-mother figure. The court thereupon denied the petitioner's application to decrease the visitation rights which she sought, allegedly in the best interests of the child; granted the respondent's application for an order restraining petitioner from removing the child from Iowa; and further ordered that upon written notification from petitioner to the court that she in fact had moved to Minnesota the court would rule upon respondent's application for custody, said application "thereby being continued on call". The respondent's counter-application for modification of de-

cree placing the custody of the child in him was, therefore, overruled.

The petitioner presents the following issues for consideration in this appeal:

(1) Was the trial court's issuance of an order restraining petitioner from removing the minor child from Iowa a modification of the initial decree of dissolution and, if so, was there a proper showing of change in circumstances to justify such an order?

(2) Was there sufficient evidence of a change in circumstances to justify a modification of the respondent's visitation rights and if so, did the trial court err in not ordering such a modification?

I. The principal issue in this case involves the characterization of the action of the trial court restraining petitioner from removing Michael from the state. The central question is whether the restraining order, as petitioner claims, was a modification of the initial divorce decree or, as respondent claims, a means of protecting respondent's visitation rights under the initial decree. If a modification of the initial decree, the burden of showing sufficient change in circumstances should have been placed on the respondent, and it is obvious from the record that it was not. If the decree is not a modification order, the restraining order, if found to be in the best interest of the child, must be affirmed.

There is some ambivalence in our case law precedent which most closely parallels the fact situation in this case. In *Brown v. Brown*, 261 Iowa 591, 155 N.W.2d 426 (1968), the plaintiff petitioned for a modification of the initial decree to allow her to take the minor children to Oregon permanently. No evidence was presented as to the welfare of the children, and the petitioner in that case was most uncertain as to the income and living conditions to be anticipated in Oregon. Out of express concern for the welfare of the children, the petitioner's request was denied, the court noting: "The original decree in this case contained no prohibition against removing the children from the state, and perhaps plaintiff needed no permission to do so", citing *Smith v. Smith*, 257 Iowa 584, 590, 133

N.W.2d 677, 680. Thus, the question as to whether the removal of children from the state by a custodial parent was a modification of the initial decree was not disposed of in *Brown*.

In *Smith*, the petitioner, with the children, had already left the state to accept employment. She then petitioned the court for a modification of the visitation rights of the decree. While finding that the out-of-state move did not justify a change in custody, the court found the move to be a proper basis for adjusting visitation rights. Relevant to the current issue, the court in *Smith* at page 680 of 133 N.W.2d, said:

"Defendant criticizes plaintiff for moving the children to Lincoln without obtaining permission of the court. Perhaps she should have asked such permission as a matter of courtesy. However, as the court observed, the move did not violate anything in the decree."

Our prior pronouncements in this area seem to indicate that if the initial decree did not include a restriction on removing children from the state, any such act would not constitute a violation or unilateral modification of the decree. This position is well stated in 24 Am.Jur.2d, Divorce and Separation, § 797, page 905:

"If a decree grants custody of a child to a parent who resides within the jurisdiction of the court, but the decree is silent concerning the place where the child is to live, the custodian may, in the absence of a statute to the contrary, remove the child from the state."

See also 27B, C.J.S. Divorce § 313, page 483, et seq., and also see 154 A.L.R. 553.

▪ The initial dissolution decree in this case was silent on the question of residential restrictions for the minor child, and thus any restriction placed upon the mobility of the petitioner and the child would amount to an amendment and modification of the original decree. Implications to the contrary can be factually distinguished. In *Brown*, both parties, or at least the moving party, assumed that leaving the state would constitute a modification of the decree.

Secondly, the major consideration in *Brown* involved the welfare of the children, an issue on which, in *Brown*, the petitioner failed to submit evidence. Here, as in *Smith*, there is an indication that the move would make the custodial parent financially better able to care for the child, a change definitely in the child's best interests. Further, in this case, the petitioner has done considerable research regarding the implications of the proposed move to Edina for the child and, as respondent points out, the evidence at least indicates there would be no cultural disadvantages involved. The uncertainty as to the welfare of the children which was deemed dispositive in *Brown* is not present in the matter before us.

We also note in the instant case the willingness of the petitioner to permit the respondent to enjoy continued visitation rights with Michael and her willingness to contribute to the cost of such visitations. We doubt seriously that the restraining order was or is necessary to protect the visitation rights of the respondent, especially since these rights are subject to later modification.

To conclude that the restraining order entered by the trial court is not a modification of the initial decree would be in effect for us to read implicit terms into the decree and disrupt the certainty and security which the parties are afforded by that document. The decree is still subject to modification upon a requisite showing of a change in circumstance regarding the best interests of Michael and there is little doubt that the trial court could have restrained petitioner's movement with the child had it been shown the child's best interest would have been detrimentally affected.

In analogous situations, other courts have held that the burden of proof of showing a change in circumstances lies on the party challenging the out-of-state move when there is no such restriction within the decree. In *Cheatham v. Cheatham*, 344 So.2d 525, 527, the Alabama Court of Civil Appeals held:

"We also find the court improperly placed the burden of proof on Mrs. Cheatham. In the modification order the court enjoined her because she did not show a necessity to remove the children to Colorado. The burden of proof is on the party seeking to show changed circumstances." (Citations).

See also *Spencer v. Spencer*, 132 Ill.App.2d 740, 270 N.E.2d 72 (1971), and *Tandy v. Tandy*, 42 Ill.App.3d 87, 355 N.E.2d 585 (1976).

We conclude from the above that the burden of proof should have been on the respondent in the trial court to show that the move to Edina would not have been in the best interests of the child, and to do so in a convincing enough manner so as to justify a modification of the initial decree. While there is much to be said for the maintenance of visitation rights by the noncustodial parent [see *In re Marriage of Glass*, 213 N.W.2d 668 (Iowa 1973) and *Green v. Sherman*, 173 N.W.2d 843 (Iowa 1970)], the interests of the custodial parent and the child may be overriding. As noted by the Louisiana Court of Appeals in *Pattison v. Pattison*, 208 So.2d 395, 396 (La. 1968):

"In our highly mobile society, it is usually unrealistic to demand that a parent granted custody of the children be confined in a certain geographical area during their minority. We take judicial cognizance of the fact that men and women are readily subject to job transfer in our society and equity demands that they should be free to go where their best opportunities lie."

■ In the light of the willingness of the petitioner to maintain respondent's visitation rights with Michael and the beneficial possibilities of the relocation, or at least the lack of detriment, the order of the trial court restraining the petitioner from removing with Michael from the state of Iowa must be reversed.

■ With regard to the "holding on call" by the trial court of respondent's petition for change of custody, it appears the trial court's findings are not based upon an ade-

quate showing of a change of circumstances to justify a change of custody. Viewed in a manner most beneficial to the respondent, the evidence indicates that the move would prove to be nondetrimental to the interests of the child. Therefore, the "holding on call" order must be reversed. See *Petition of Fenchel*, 268 N.W.2d 207, 209 (Iowa 1978); *In Re Marriage of Stom*, 226 N.W.2d 797, 799 (Iowa 1975); *Shipley v. Shipley*, 182 N.W.2d 125, 127 (Iowa 1970).

■ II. The petitioner asks the court to revise the respondent's visitation rights in light of the proposed move to Edina. This appears to us to constitute an adequate ground for the modification of the original decree. As we noted in *In re Marriage of Glass*, 213 N.W.2d 668, 670 (Iowa 1973):

"To justify a modification of visitation rights there must be demonstrated a change of circumstances since the dissolution decree, but such change may be much less extensive than would be necessary to obtain custody. *Donovan v. Donovan*, 212 N.W.2d 451 (Iowa 1973) ('the best interest of a child ordinarily requires continuing association with his noncustodial parent unless the contrary is clearly shown'). Without question removal of the child from Iowa to California was a sufficient change of circumstances to require modification of the decree in this case. *Green v. Sherman*, 173 N.W.2d 843 (Iowa 1970)."

In *Glass*, as in *Smith, supra*, the change in residence of the custodial parent was held to justify a revision of visitation rights.

The welfare of the minor child is of course our primary concern. With the greater distances involved in travel to accomplish visitations, the continuation of the initial visitation provisions of the decree may prove to be "unjustifiably upsetting and disruptive to the routine of the child(ren)". *Remsburg v. Remsburg*, 180 N.W.2d 461, 463 (Iowa 1970). Trips from Edina to Grinnell on alternate weekends would be unnecessarily disruptive to the child and a revision of the provisions of the original decree must necessarily follow.

Respondent points out that generally the best interests of the children require a continuing association with their father. *Green v. Sherman*, 173 N.W.2d 843 at 847 (Iowa 1970). Respondent's association with Michael would not be terminated by the granting of petitioner's request, but only restricted. As noted in *Green*, respondent's visitation rights are derivative from and servient to the best interests of the child. To the extent that the initial visitation provisions of the decree would prove disruptive to the normal development of the child and thus not in the child's best interest, they must be revised. Recognizing that continued association with the noncustodial parent is beneficial to the child and that the enforcement of the initial provisions as applied to petitioner's prospective Edina residence would not be beneficial, the tensions between the initial decree and the changed circumstances must be resolved in a manner designed to consider the interests of all involved. The petitioner's request for a revision of visitation rights should be sustained, bearing in mind her willingness to contribute to the necessary transportation costs in effecting the visits between the child and his father.

Based on all of the foregoing, the order, judgment and decree of the trial court is hereby reversed, and this case is remanded to the trial court for further proceedings and the entry of a modified decree in conformity with this opinion. The costs of this appeal are taxed to the respondent.

REVERSED AND REMANDED.

All Justices concur except ALLBEE, McGIVERIN and LARSON, JJ., who take no part.