# IN THE COURT OF APPEALS OF IOWA

No. 3-1249 / 13-0675
Filed May 29, 2014

IN RE THE MARRIAGE OF RICHARD R. SCHMIDT
AND JILL SCHMIDT

Upon the Petition of
RICHARD R. SCHMIDT,
          Petitioner-Appellant,

And Concerning
JILL SCHMIDT,
          Respondent-Appellee.
_____


          Appeal from the Iowa District Court for Polk County, David L. Christensen,

Judge.


          Richard Schmidt appeals the district court's order denying his application

to appoint a reunification therapist and prohibiting him from attending his

children's extracurricular activities.  **AFFIRMED IN PART AND REVERSED IN**

**PART.**



          Ward A. Rouse, West Des Moines, and Dustin M. Mueller, Des Moines,

for appellant.

          Mark R. Hinshaw, West Des Moines, for appellee.



          Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Richard Schmidt appeals the district court's denial of his application to appoint a reunification therapist. He also challenges the court's order prohibiting him from attending his children's extracurricular activities and its denial of his motion to exclude the testimony of the children's therapists. We decline to further this protracted litigation upon temporary orders and affirm the denial of the application for appointment of a reunification therapist. We reverse the order prohibiting Richard from attending the extracurricular activities as no modification action is pending nor did the district court conclude there was a change of circumstances. The issues of legal custody and visitation have been indefinitely deferred, and visitation has been improperly delegated to a third-party. We urge the district court and the parties to resolve these issues forthwith.

### I. Background Facts and Proceedings.[1]

In 2006, the three young children (four-year-old D.S. and six-year-old twins, E.S. and G.S.) of Richard Schmidt and Jill Schmidt witnessed a domestic assault during which their father choked their mother.

### *A. Dissolution Decree.*

Richard and Jill were divorced in 2007. Incorporating the parties' stipulated agreement, the court filed a dissolution decree on December 7, 2007, which stated in part, "[T]he Court bifurcates this case with regard to [Richard's]

---

[1] Our review has been made more difficult by the appellant's failure to follow our rules of appellate procedure in compiling the appendix. *See* Iowa Rs. App. P. 6.905(7)(c) ("The name of each witness whose testimony is included in the appendix shall be inserted on the top of each appendix page where the witness's testimony appears."); 6.905(7)(e) ("The omission of any transcript page(s) or portion of a transcript page shall be indicated by a set of three asterisks at the location on the appendix page where the matter has been omitted.").

legal custodial rights and visitation rights concerning the parties' minor children."

Jill was granted physical care of the children and was to make all decisions affecting the children until Richard's "legal custodial rights and his visitation rights are determined by the Court and/or Dr. Sheila Pottebaum."

The decree also provided:

[Richard] shall not communicate with [Jill] or the children in person, by telephone, in writing, through third persons, or otherwise.
. . . [Richard] shall not be allowed to go to or contact the children's school. [Richard] will be allowed to make arrangements through Dr. Pottebaum to go to her office to make any communication with the school regarding the minor children. [Jill] shall provide to [Richard] the children's report cards and/or progress reports, without any indication of the school attending, address, teachers' names, etc., through Dr. Sheila Pottebaum. Dr. Pottebaum will provide this information to [Richard] as she sees fit.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court, that *[Richard] is not awarded any visitation at this time. [Richard's] future visitation will be made upon the recommendations of Dr. Sheila Pottebaum*, upon consultation with any experts working with the children, including but not limited to: Jeanne White, LISW, Dr. Sasha Khosravi, D.O.,[2] P.J. McDonald, and Dave Cowan. The Court will retain jurisdiction of this matter to resolve any issues if either of the parties is dissatisfied with the recommendations of Dr. Pottebaum.

(Emphasis added.) Since the entry of the decree, these proceedings have been a procedural morass.

On February 28, 2008, the district court granted Richard's motion and appointed Lora McCollom to be the children's guardian ad litem (GAL).

On June 30, 2008, upon the recommendations of the GAL and the children's visitation coordinator, Maureen Kennedy, the court appointed Bruce

---

[2] Dr. Randall Kavalier became the children's psychiatrist after Dr. Khosravi left practice.

Buchanan as a reunification therapist. Buchanan was to assist the children in preparing to meet with their father.

### B. Amended Decree.

On October 23, 2008, the court entered an order amending the dissolution decree by striking and replacing the three paragraphs quoted above. The amended decree allowed Richard to communicate with Jill "in a therapeutic setting during the reunification process between [Richard] and the parties' children."

The amended decree also authorized Richard to have "reasonable contact with the children's teachers" and access to school records regarding the children, subject to the redaction of Jill's personal and contact information.

Further, the amended decree ordered:

> *[Richard] shall have visitation with the parties' minor children as recommended by, and pursuant to any conditions imposed by Bruce Buchanan and/or the Guardian Ad Litem after consultation with all treating professionals*. Maureen Kennedy shall supervise the visits as recommended by Bruce Buchanan and/or the Guardian Ad Litem. The Court shall retain jurisdiction of this matter to resolve any issues if either party is dissatisfied with the recommendations of Bruce Buchanan and/or the Guardian Ad Litem.

(Emphasis added.)

### C. December 24, 2008 "Interim Order."

An interim order was entered on December 24, 2008, in which the district court again deferred the issue of joint legal custody. The court deferred the issue until the March 2, 2009 "review hearing" and ordered:

> [D]uring the remaining pendency of the herein proceedings or until further Order of this Court:

a. *Both parents shall have legal access to information concerning the children, including but not limited to medical, educational, and law enforcement records.* Each party shall be provided with the names of all persons providing educational, physical health, mental health, legal, or other services to any child immediately upon arranging for said service, except in emergencies, in which the other parent should be notified as soon as possible. In the event of a medical emergency, or if any child should be lost or missing, both parties shall make every effort to notify the other parent as soon as possible and, if possible, talk with one another about possible courses of action. However, under such circumstances, either parent can sign legal consents or take any other necessary actions.

b. Each parent shall support the right of the other to love and discipline the children. Disciplinary actions taken by one parent will be supported by the other parent. Disagreements about child-rearing practices will be resolved outside the presence of the children.

c. Each of the parties shall act to foster feelings of affection and respect between the children and the other party, and neither will do anything which may estrange any child from the other party or impair any child's high regard for the other parent.

d. The parties shall only communicate with each other as to matters concerning their children as set forth in preceding subparagraphs a, b, and c, and all such communications shall only be by e-mail until further Order of this court. However, the parties shall not e-mail each other until the Order of Protection entered March 1, 2007, (In the Iowa District Court for Polk County, State of Iowa vs. Richard Robert Schmidt . . . .

IT IS FURTHER ORDERED that this Court *shall not establish [Richard's] permanent visitation schedule until it has been determined that [Richard] should have unsupervised visitation with the parties' minor children.*

. . . .

IT IS FURTHER ORDERED that [Richard's] future supervised visitations after December 29, 2008, shall be scheduled by the GAL as soon as reasonably possible with time being of the essence after consulting with Bruce Buchanan and Maureen Kennedy.

(Emphasis added.) The court also named Dr. Kelli Hill-Hunt as the children's

therapist, removed Jeanne White as therapist "in the absence of an emergency,"

scheduled in detail the specifics of two reunification visits, and ordered the GAL to file a report by early January 2009.

On January 12, 2009, the GAL reported to the court there had been an attempt to have the children visit with Richard on December 22, 2008. However, despite repeated attempts by McCollom, Kennedy, and Jill, the children refused to see their father. McCollom reported that for weeks after this attempted visit, the children would not stay in their home; were fearful that their father, Kennedy, or McCollom would "come get them"; needed continued reassurance from Jill or her parents that they were safe; and saw their social worker, White, on an emergency basis. White reported the children were on a waiting list to see trauma therapist Dr. Hunt-Hill. McCollom and Kennedy reported any continued attempts at visitation would be inappropriate at this time.

A review hearing was held on March 2, 2009, but there was no resolution of the remaining issues because Dr. Hill-Hunt could not yet offer any significant input as she had only seen the children one time. No further reunification attempts occurred in 2009.

### D. October 28, 2010 ruling.

In August 2010, Richard filed a motion to appoint a reunification counselor. Initially, Bruce Buchanan was appointed as a reunification counselor and pursuant to the amended decree Richard was to have visitation rights under such conditions imposed by Buchanan and the GAL. However, at some point

Buchanan exited these proceedings, and no one has been appointed in his place.[3]

The GAL resisted Richard's motion, noting Dr. Hill-Hunt "has repeatedly stated that it is not in the children's best interest for them to be forced into contact with their father at this time. The children continue to demonstrate significant fear of their father and all things associated with him, including his parents." She asked that the court "defer to the expertise" of Dr. Hill-Hunt and "refrain from making any further order regarding reunification therapy or contact" with Richard "until such time as Dr. Hill-Hunt deems it appropriate."

On October 28, 2010, following a telephonic hearing, the district court noted that both the GAL and Dr. Hill-Hunt resisted the motion to appoint a reunification therapist as not being in the children's best interests. The court denied the motion and ruled it "will not enter any further orders regarding reunification until such time as Dr. Kelli Hill-Hunt deems it appropriate."

### E. November 7, 2011 ruling.

Richard again filed a motion to appoint a reunification counselor and request for a status hearing on August 17, 2011. GAL McCollom's resistance stated that on August 30, 2011, Dr. Hill-Hunt indicated "it is not appropriate for the children to begin the process of reunification with their father at this time." On November 7, 2011, the court denied the motion to appoint a reunification therapist and request for status hearing.

---

[3] The record does not reflect when Buchanan exited these proceedings.

### *F. August 15, 2012 Declaratory Judgment.*

On August 15, 2012, the court entered a declaratory judgment upon Richard's request "as to the status of contact between the Petitioner, Respondent, and the minor children." The court determined "there are no protective orders in effect at this time."

### *G. Motion re: Extracurricular Activities.*

On October 22, 2012, Jill filed a "motion for expedited hearing to determine [Richard's] attendance at extracurricular activities of the minor children." Jill's motion stated Richard indicated he and his parents intended to attend the children's activities. Jill reported she had

> consulted with Kelli Hill Hunt, Ph.D. and Randall A. Kavalier, D.O. with regard to [Richard's] intentions. Both experts who see the children on a regular basis have expressed that if [Richard] and his parents attend the children's activities that it would be very traumatic for the children.

Her prayer for relief asked that the court determine "whether or not [Richard] and/or his parents should be allowed to attend the children's activities."

On October 24, Richard filed a resistance to the motion to restrain him from attending the children's activities and made application for the appointment of a parenting coordinator and reunification therapist.

Also on October 24, Richard filed a motion to compel, asserting he had served Jill with a request for production of documents, specifically requesting a medical release for Drs. Hill-Hunt and Kavalier for mental health records of the parties' minor children, and that the mental health providers had refused to

provide the children's mental health records. A hearing on the motion to compel was scheduled for November 2.

On November 1, Richard filed a motion to exclude the testimony of Drs. Hill-Hunt and Kavalier, pursuant to an unpublished opinion of this court, *In re R.G.*, No. 11-0577, 2011 WL 2695281 (Iowa Ct. App. July 13, 2011) (finding in a child-in-need-of-assistance proceeding that father was entitled to child's medical records to cross-examine the therapist who testified in detail about therapy sessions concerning allegations the father sexually abused the child).

That same date, GAL McCollom moved to quash subpoenas served on Drs. Hill-Hunt and Kavalier, asserting the children's doctor/patient and therapist/patient privileges pursuant to Iowa Code section 622.10 (2011) and *Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, 764 N.W.2d 534 (Iowa 2009). McCollom also resisted the application for appointment of a reunification therapist and parenting coordinator.

A hearing was held on November 2 to address the motion to exclude the doctors' testimony, the motion to compel the release of information, and the motion to quash the subpoenas. Dr. Kavalier testified that he was acting as an advocate for the children and was willing to provide "his clinical impression of my patients," but was not willing to release the children's medical records to Richard because to do so "would cause a regression in their physical and emotional state." He stated the children believed Richard had tried to kill their mother and, at the time, "they thought their mother was dying."

Dr. Hill-Hunt testified she had not and would not release the children's records to anyone other than a treating physician. She stated that "because of the trauma [the children] experienced, [they] have significant trust issues." She testified that if their records were released, the children "would regress," "[t]heir anxiety would increase," and they may develop "panic symptoms again, difficulty with sleep," and other symptoms.

On November 6 the district court granted the GAL's motion to quash the subpoenas and overruled Richard's motions to compel the production of treatment records and exclude the testimony of Drs. Hill-Hunt and Kavalier.

On January 22, 2013, a hearing was held to address Jill's motion regarding Richard's attendance at the children's activities and Richard's motion to appoint a reunification therapist and parenting coordinator. Drs. Hill-Hunt and Kavalier both testified. Dr. Hill-Hunt testified that while the boys were making progress in a number of areas in their lives, the children were not ready for reunification therapy.

Dr. Kavalier testified he was a child and adolescent psychiatrist who had been involved with the three Schmidt boys for about five years. He stated two of the boys were currently on medications to alleviate anxiety. He opined it was not in the children's best interests to have their father attend their activities or to have a reunification therapist appointed because the children were not ready for either occurrence.

Dr. Craig Rypma testified he had completed a risk assessment of Richard in 2010 and concluded he did not see "any significant risk for future violence on

Rick's part." Dr. Rypma testified as to his general disagreement with the course of the children's treatment and lack of progress toward getting over their fear of their father.

### *H. February 26, 2013 Order—the Subject of this Appeal.*

On February 26, 2013, the district court ruled "[Richard] shall be enjoined from going to the children's extracurricular activities. [Jill] shall timely provide [Richard] with information about when and where the children's extracurricular activities are occurring so that he doesn't inadvertently attend."

The court also denied the application for the appointment of a reunification therapist and parenting coordinator, finding "it is premature to order the services of a reunification therapist or a parenting coordinator."

The court "reaffirm[ed]" its December 24, 2008 interim order quoted above.

On March 13, 2013, Richard filed a motion to enlarge findings, asking that the court provide its "legal theories supporting the determinations made in the Court's Order." The court overruled the motion on April 10.

On April 24, 2013, Richard appealed the "Final Order entered in this case on the 10th of April, 2013." Richard contends the district court acted inequitably in denying his application for appointment of a reunification therapist; in enjoining him from attending any of his children's extracurricular activities; and in allowing the children's therapists to testify without releasing the children's treatment records to him.

**II. Scope and Standard of Review.**

Our review of the rulings of the district court sitting in equity is de novo. *Harder*, 764 N.W.2d at 536.

**III. Discussion.**

This court has painstakingly reviewed the record before it. While we appreciate the district court's efforts to deal with the motions presented to it, the procedural difficulties are a result of the indefinite deferral of a determination of custody and visitation rights of the parties. This case exemplifies why the district court in a dissolution action is ill-equipped to provide on-going supervision or micromanagement of custody and visitation arrangements notwithstanding the well-intentioned efforts of the district court.

To resolve the issues presented, we must consider the procedural morass from the time the decree was entered. The dissolution decree was entered in 2007, but bifurcated the case and retained jurisdiction to fix Richard's legal custodial and visitation rights at a later date. On October 23, 2008, the court amended the dissolution decree, providing "[Richard] shall have visitation with the parties' minor children as recommended by, and pursuant to any conditions imposed by Bruce Buchanan[4] and/or the Guardian Ad Litem after consultation with all treating professionals." Bruce Buchanan was appointed as a reunification therapist.

Our supreme court has taken a dim view, but has not prohibited decrees that reserve jurisdiction to resolve issues in the future. "Although stopping short of forbidding the practice," our supreme court has "discouraged the retention of

---

[4] The record contains no report by or mention of Bruce Buchanan after January 2009.

jurisdiction to modify divorce decrees without a showing of change of circumstances." *In re Marriage of Schlenker*, 300 N.W.2d 164, 165 (Iowa 1981) (citations omitted). Although the original dissolution decree in this action reserved jurisdiction to resolve the custody and visitation issues, it was a final judgment that was not appealed. *In re Marriage of Fenchel*, 268 N.W.2d 207, 209 (Iowa 1978) (concluding a final decree is the one in which the marriage is terminated). "If the decree is supplemented by a later decree, only the supplemental decree may then be appealed. A supplementary decree which decides an issue reserved in the original decree is procedurally analogous to an order modifying a decree." *Id*. Here, there was also no appeal taken from the amended decree. Unfortunately, the amended decree still did not resolve either the custody or visitation issues, and nearly seven years later the issues remain unresolved. In regard to Richard's visitation rights with the minor children, the amended decree stated, "The Court shall retain jurisdiction of this matter to resolve any issues if either party is dissatisfied with the recommendations of Bruce Buchanan and/or the Guardian Ad Litem."

Later in these proceedings various orders were entered, which further complicate the status of Richard's visitation rights. The "interim order" entered on December 24, 2008, provided that Richard's future visitation rights shall be supervised and "shall be scheduled by the Guardian Ad Litem as soon as reasonably possible with time being of the essence after consulting with Bruce

Buchanan and Maureen Kennedy."[5]  The order also appoints Dr. Kelli Hill-Hunt as the children's therapist.

Apparently, after the entry of this order, Buchanan discontinued serving as the reunification therapist because Richard filed a motion for the appointment of a reunification therapist.  The GAL resisted the motion and, on October 28, 2010, after a hearing, the court entered a ruling on the motion that provided in part, "the court will not enter any further orders regarding reunification until such time Dr. Hill-Hunt deems it appropriate."[6]

Although no appeals were taken from the interim order filed December 24, 2008, or the ruling on October 28, 2010, both clearly effectuated a modification of the amended decree.  The "order" required visitation to be supervised after consultation with Buchanan and Kennedy.  The "ruling" prevented Buchanan from being replaced as the reunification therapist until Dr. Hill-Hunt recommended it.  The result left Richard with no ability to exercise any visitation rights until Dr. Hill-Hunt thought it was appropriate.

Our court has disapproved delegating the power to control or modify visitation rights to a therapist or any third party.  In *In re Marriage of Stephens*, 810 N.W.2d 523, 530-31 (Iowa Ct. App. 2012), our court stated,

> It is well established that the district court is the only entity that can modify a custody or visitation order, subject to the review of the appellate courts.  *In re Marriage of Brown*, 778 N.W.2d 47, 54 (Iowa Ct. App. 2009); *see also* Iowa Code § 598.41 (providing

---

[5] Kennedy's status is not defined by the order but we suspect she was to supervise the visitation.

[6] A subsequent attempt on August 17, 2011, to seek the appointment of a reunification therapist failed because Richard's counsel "failed to cooperate in scheduling a hearing on the motion."  We note, too, the GAL also resisted the motion contending Dr. Hill-Hunt "does not deem it appropriate to begin the reunification process."

> the factors the *court* should considering in awarding custody and visitation rights). This obligation to modify a decree cannot be delegated to any person or entity because that person or entity has no jurisdiction to render such a decision. The legislature has granted to the court the responsibility to make an impartial and independent determination as to what is in the best interests of the child, and this decision cannot be controlled by the agreement or stipulation of the parties. *See Walters v. Walters*, 673 N.W.2d 585, 592 (Neb. Ct. App. 2004). While the district court could seek and consider the therapist's recommendations only the district court could modify the decree after the parties had the right to be heard.

(Footnote omitted.) In *Stephens*, the mother was granted some limited visitation by a modified decree, but also permitted the visitation to increase at the discretion of a therapist. 810 N.W.2d at 525. Our court concluded the district court had impermissibly delegated its authority to the therapist. *Id.* at 530.

We are also guided by the principle that a party seeking a modification of a decree "must establish by a preponderance of the evidence that there has been a substantial change in circumstances since the entry of the decree or its last modification." *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995). However, to modify visitation rights, a lesser burden is required. "The parent seeking to modify child visitation provisions of a dissolution decree must establish by a preponderance of evidence that there has been a material change in circumstances since the decree and that the requested change in visitation is in the best interests of the children." *In re Marriage of Salmon*, 519 N.W.2d 94, 95-96 (Iowa Ct. App. 1994) (citing *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). Further, where a decree retains jurisdiction to review custody and visitation terms, our supreme court has determined, "Only when the decree unequivocally provides for later trial court review without the necessity of showing

a change of circumstances will we say this was the court's intent." *In re Marriage of Schlenker*, 300 N.W.2d 164, 166 (Iowa 1981). After *Schlenker*, our court stated,

> We find in future cases that prior to entering *any* provision into a decree of dissolution allowing future review of child custody without the necessity of a showing of a change in circumstances, the trial court must require a showing that the case is within the exceptional circumstances contemplated by the supreme court in *Schlenker.* Such showing must be on the record and a finding stating the reasons for the stipulation must be stated in the decree.

*In re Marriage of Vandergaast*, 573 N.W.2d 601, 603 (Iowa Ct. App. 1997).

But the even more fundamental problem is that the *court* has never determined Richard's permanent visitation or custody rights. "One of the oldest fundamental liberty interests consistently recognized by the Supreme Court is the interest of parents in the care, custody, and control of their children." *Hensler v. City of Davenport*, 790 N.W.2d 569, 581 (Iowa 2010) (citing numerous cases, including *Troxel v. Granville,* 530 U.S. 57, 65–66 (2000), and *Santosky v. Kramer,* 455 U.S. 745, 753 (1982)). Thus, "state action infringing on that interest must be narrowly tailored to serve a compelling state interest." *Spiker v. Spiker*, 708 N.W.2d 347, 352 (Iowa 2006). For example, chapter 232 authorizes the juvenile court to intercede in certain instances. *See, e.g.,* Iowa Code §§ 232.2(5) (defining a child in need of assistance), .2(20) (defining a family in need of assistance). And chapter 598 authorizes and mandates the district court to intercede in a dissolution-of-marriage proceeding to order custody and visitation. *Id.* § 598.41(1)(a) (stating "[t]he court . . . shall order the custody award . . . .").

Without the benefit of a pending modification action before us, we are unable to remand with directions that the district court determine Richard's legal custodial and visitation rights as error has not been preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also* Iowa R. App. P. 6.1206 (concerning remands). We strongly urge that the protracted litigation on the temporary measures end and custody and visitation be permanently fixed. If necessary to resolve the issues, the court has authority to order a mental or physical examination of the children and to appoint separate counsel for the children.[7] *In re Marriage of Bingman*, 209 N.W.2d 68, 71 (Iowa 1973).

## A. Appointment of Reunification counselor.

With this backdrop we consider the first issue on appeal, whether the district court erred in denying Richard's application for appointment of a reunification therapist.[8] Although there is no specific statutory authority for

---

[7] If a mental examination of the children is ordered, in light of the length of time since Richard has seen the children and the children's alleged great fear of him, the court may be well advised to require the examination to include a determination of whether the children have suffered from parental alienation. *See* Marlene Moses & Beth A. Townsend, *Parental Alienation in Child Custody Disputes*, 47 Tenn. B.J. 25 (May 2011). Such a determination may assist the court in determining if the children still suffer from the effects of the incident of domestic abuse seven years ago or if there are other causes for their unusual conduct.

[8] There is some question whether the district court's order was a final order for purposes of appeal. We need not decide the issue, however. Even if this issue is interlocutory, we conclude the matter meets the requirements provided in Iowa Rule of Appellate Procedure 6.104(2), which allows review upon a finding that "such ruling or order involves substantial rights and will materially affect the final decision and that a determination of its correctness before trial on the merits will better serve the interests of justice." Iowa R. App. P. 6.108 ("If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the

appointing a reunification therapist, the court does have authority to order "age-appropriate counseling for children who are involved in a dissolution of marriage action." Iowa Code § 598.15(6). Absent the ruling filed October 28, 2010, preventing the appointment of a reunification therapist until Dr. Hill-Hunt recommended such an appointment, clearly a therapist should have been appointed to replace Buchanan because Richard was granted supervised visitation arranged by the GAL in consultation with Buchanan and Kennedy. Although Richard did not appeal the ruling filed October 28, 2010, we conclude Richard's ability to exercise any visitation was improperly delegated to Dr. Hill-Hunt as Buchanan was no longer serving in a capacity to provide his consultation to the GAL.

However, if we reverse the district court's order and require the appointment of a reunification therapist, we are simply prolonging litigation in furtherance of the original decree, the amended decree, and subsequent orders we view to be temporary measures, which have improperly delegated authority to a therapist contrary to the children's best interests. *See Vandergaast*, 573 N.W.2d at 603; *Stephens*, 810 N.W.2d at 530-31. Accordingly, we affirm the denial of the application for an appointment of a reunification therapist. We do not suggest that an appointment of a reunification therapist would be improper in any future proceedings between these parties.

---

proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested.").

**B. Extracurricular Activities.**

In its February 26, 2013 ruling, the district court enjoined Richard from even inadvertently attending his children's extracurricular activities for an indefinite period of time, and reaffirmed a December 24, 2008 "interim order" that deferred ruling on Richard's joint legal custody and refused to establish Richard's permanent visitation schedule.

Richard argues the district court acted without authority in enjoining him from attending the children's activities. We agree. Jill did not seek an injunction. *See generally Planned Parenthood of Mid-Iowa v. Maki*, 478 N.W.2d 637, 639 (Iowa 1991) ("An injunction is an extraordinary remedy which should be granted with caution and only when clearly required to avoid irreparable damage. An injunction should issue only when the party seeking it has no adequate remedy at law."). Jill also did not file a modification action. Rather she filed a motion to determine petitioner's attendance at extracurricular activities of the minor children. At the time the motion was filed, there was no prohibition or order preventing Richard from having contact with the minor children although he had no visitation rights. Only the initial decree prevented his contact with the minor children but that provision was stricken upon the entry of the amended decree.

Whether the court's order was intended to provide injunctive relief or was a restraining order, we conclude it effectuated a modification of the amended decree. *See In re Marriage of Lower*, 269 N.W.2d 822, 825-26 (Iowa 1978) (concluding a restraining order preventing the removal of a minor child from the state of Iowa was a modification of the decree where the decree did not include a

provision restraining the permanent removal of the child). In *Lower* the court stated, "To conclude that the restraining order entered by the trial court is not a modification of the initial decree would be in effect for us to read implicit terms into the decree and disrupt the certainty and security which the parties are afforded by that document." *Id.* at 826. Similarly, the court's order enjoining Richard from attending the children's extracurricular activities effectively modified the terms of the decree as amended.

We do not consider lightly a parent's desire to attend their children's extracurricular activities. Even when there is a no contact between parents, distance parameters may be imposed so that both parents may attend their children's activities. Here, Richard was not prevented by the amended decree from having contact with the minor children on the sidewalk, grocery store, or anywhere they might meet. To prevent his attendance of extracurricular activities when he can have other contact with the minor children is simply nonsensical. Moreover, to modify the amended decree required a showing of a change of circumstances not existing in this record; the district court's order also did not recite any such change. We conclude the district court acted inequitably in granting Jill's motion.

**C. Testimony of Experts and Release of Their Records.**

Because we have concluded the court acted inequitably in granting Jill's motion regarding extracurricular activities, we need not decide if the court erred in allowing Dr. Hill-Hunt and Dr. Kavalier to testify. However, in the event the

issue should arise in subsequent proceedings, we simply note that under the December 2008 interim order,

> Both parents shall have legal access to information concerning the children, including but not limited to medical, educational, and law enforcement records. Each party shall be provided with the names of all persons providing educational, physical health, mental health, legal, or other services to any child immediately upon arranging for said service, except in emergencies, in which the other parent should be notified as soon as possible.

However, "when a mental health provider claims the release of such information is not in the child's best interest, the court must determine whether the records should be released applying the best-interest-of-the-child test." *Harder*, 764 N.W.2d at 538

### IV. Conclusion.

We affirm the district court's denial of Richard's application for appointment of a reunification therapist, but reverse the district court's order granting injunctive relief or a restraining order prohibiting Richard's attendance of extracurricular activities. We further conclude the issue regarding the testimony of Dr. Hill-Hunt and Dr. Kavalier is moot in light of our decision relative to the extracurricular activities. Costs on appeal shall be paid by Jill.

**AFFIRMED IN PART AND REVERSED IN PART.**