## IN THE COURT OF APPEALS OF IOWA

No. 15-1371
Filed October 28, 2015

**IN THE INTEREST OF K.L.P.,**
    **Minor Child,**

**B.P., Father,**
    Appellant.

_____

    Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

    A father appeals from an order terminating his parental rights.
**REVERSED AND REMANDED.**

    Nicole Greenwood of Denefe, Gardner & Zingg, P.C., Ottumwa, for appellant.

    Thomas J. Miller, Attorney General, Kathryn S. Miller-Todd, Assistant Attorney General, James Blomgren, County Attorney, and Bradley Kinkade, Assistant County Attorney, for appellee.

    Misty White-Reinier, Grinnell, for mother.

    Amber Thompson, Sigourney, attorney and guardian ad litem for minor child.

    Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

Bradley, the father, appeals the order terminating the parent-child relationship between himself and K.L.P. On appeal, he contends the State failed to prove by clear and convincing evidence the statutory grounds authorizing the termination of his rights. He also argues the juvenile court should have deferred permanency for six months to allow him to establish a bond with K.L.P. At issue is what rights, if any, does an incarcerated parent have in establishing and maintaining a relationship with a child where the parent is released from prison shortly after the child's birth but in the midst of an adjudication or termination proceeding.

I.

K.L.P. was born August 2014 to Amanda. At the time of K.L.P.'s birth, Amanda was separated from but married to William, who is the established legal father of K.L.P. During her separation from William, Amanda had a lengthy relationship with Bradley prior to the time of K.L.P.'s birth. It was not contested during this proceeding that Bradley was K.L.P.'s biological father. The juvenile court lacked the authority to terminate William's parental rights as only the legal father of K.L.P., *see In re J.C.*, 857 N.W.2d 495, 508 (Iowa 2014) (concluding a child's established father is not a "father" within the meaning of Iowa Code chapter 232), but the juvenile court dismissed him from the case as an unnecessary party. At the time of K.L.P.'s birth, Bradley was incarcerated at Mount Pleasant Correctional Facility on a marijuana conviction.

At the end of September 2014, the child was removed from Amanda's care upon the Iowa Department of Human Services ("IDHS") receiving information Amanda posed a risk to the child due to Amanda's methamphetamine use and bizarre behavior. The child's guardian ad litem filed a report to the court on October 8, 2014. The guardian ad litem was aware Bradley was incarcerated but did not know where. The guardian ad litem recommended the juvenile court obtain additional information regarding Bradley's incarceration and consider suspending visitation with Bradley or requiring IDHS to consult with the guardian ad litem before allowing visitation with Bradley. IDHS also submitted a recommendation on the same date. IDHS recommended Bradley participate in visitation with K.L.P. Visitation was denied Bradley.

On October 22, 2014, the child was adjudicated in need of assistance pursuant to Iowa Code sections 232.2(6)(c)(2) and 232.2(6)(n) (2013). Bradley participated telephonically during the adjudication hearing. The juvenile court ordered services for Amanda. The juvenile court ordered Bradley to participate in visitation with the child at the discretion of IDHS in consultation with the guardian ad litem. The court also ordered paternity testing for Bradley. The guardian ad litem provided another recommendation to the juvenile court in conjunction with the adjudication hearing. The guardian ad litem opined it was not in the best interest of K.L.P. to have visitation with Bradley. Visitation was denied Bradley.

The matter came on for dispositional hearing in December 2014. The court ordered K.L.P remain a child in need of assistance in the custody of the

Mahaska County Department of Human Services for purposes of placement in relative care. The court again ordered paternity testing. The court again ordered Bradley have visitation with K.L.P. at the discretion of IDHS in consultation with the guardian ad litem. IDHS provided a social history report and case permanency plan in conjunction with the hearing. The social history report explained Bradley had been in a relationship with Amanda but the relationship terminated after he was convicted and sentenced to prison. The report noted Bradley's biggest concern was "focusing on K.L.P." The report noted Bradley informed IDHS he would be eligible for parole in February or March 2015 upon completion of substance abuse treatment. IDHS recommended K.L.P. have visitation with Bradley. The case permanency goal was reunification with Amanda with a target date of April 22, 2014, with a concurrent plan of termination of parental rights/adoption. Although the permanency goal was reunification and although IDHS was aware of Bradley's impending release, visitation was denied Bradley.

A dispositional review hearing was held in February 2015. The juvenile court ordered the permanency goal be changed from reunification to the termination of parental rights. Bradley participated telephonically and objected to the termination of his parental rights. The juvenile court ordered the child remain in the custody of the county department of human services for the purpose of continued placement in relative care. The court again ordered Bradley to take a paternity test. The juvenile court again ordered Bradley have visitation with K.L.P. at the discretion of IDHS in consultation with the guardian ad litem. IDHS

provided a report to the court in conjunction with this hearing. The report noted paternity testing had not yet been completed. The report noted Bradley could be released from incarceration at any time to a substance abuse treatment facility upon a bed becoming available. The report recommended Bradley have visitation with the child. Visitation was denied Bradley.

In April 2015, the matter came on for termination hearing. The child was only seven months old at the time of the termination hearing. The mother consented to termination, and her rights are not at issue in this appeal. By the time of the termination hearing, Bradley had been paroled to the Ottumwa Residential Facility. Bradley opposed the termination of his parental rights and requested an additional six months to pursue reunification. The juvenile court ordered termination of the Bradley's rights pursuant to Iowa Code section 232.116(1)(d), (e), and (h) (2013), although there does not appear to be any discussion of paragraph (d) in the juvenile court's findings or conclusions. The juvenile court found Bradley was the biological father of K.L.P. although paternity testing was never completed because the caseworker filled out the wrong forms. The juvenile court found the father was still incarcerated at the time of the termination hearing, although he was not. Bradley timely filed this appeal.

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). The State has the burden to

prove the allegations of the petition by clear and convincing evidence. *See* Iowa Code § 232.96. Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. *See L.G.*, 532 N.W.2d at 481. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. *See id.* Because our review is de novo, we should not be passive where there is a deficient presentation of evidence and merely rubber stamp what has come before. Instead, we must satisfy ourselves the State has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds authorizing the termination of a parent's rights, a legal standard imposed to balance the parent's interest in establishing and maintaining the parent-child relationship and the State's obligation to protect the children within its jurisdiction.

III.

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.*

A.

We first address the sufficiency of the evidence supporting the grounds for termination. Each of the grounds for termination at issue in this case requires the State to make reasonable efforts to offer services to maintain the integrity of the family unit. Termination may be had pursuant to Iowa Code section 232.116(1)(d) when the State proves by clear and convincing evidence the following:

> 1. The court has previously adjudicated the child to be in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents . . . [,and]
> 2. Subsequent to the child in need of assistance adjudication, *the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.*

Iowa Code § 232.116(1)(d) (emphasis added).[1] To terminate parental rights under paragraph (e), the State must prove by "clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child *despite being given the opportunity to do so.*" Iowa Code § 232.116(1)(e) (emphasis added). Termination may be had under section 232.116(1)(h) where, among other things, the "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as

---

[1] "[P]hysical abuse or neglect" and "abuse or neglect" are terms of art in this context. Within chapter 232, "physical abuse or neglect" and "abuse or neglect" mean "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." Iowa Code § 232.2(42). There is no evidence of "abuse or neglect" with respect to Bradley, but Bradley does not raise the issue.

provided in section 232.102 at the present time." As part of its ultimate proof under this provision, the State must establish it made reasonable efforts to return the child to the child's home. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the [department of human services] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *Id.* at 493; *see* Iowa Code § 232.102(7) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child").

Bradley contends the department failed to make reasonable efforts here due to the department's denial of any visitation with K.L.P. There is a legal and policy preference to maintain the integrity of the family unit where possible. *See* 42 U.S.C. § 671(15)(B); Iowa Code § 232.102(7) (requiring reasonable efforts to work toward reunification); *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life."). Visitation between a parent and child is an important ingredient to the goal of maintaining the integrity of the family unit. *See In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). "Although . . . a parent's imprisonment may create difficulties in providing

reunification services, . . . imprisonment [does not] absolve the department of its statutory mandate to provide reunification services under all circumstances." *In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). "Instead, . . . the department must assess the nature of its reasonable efforts obligation based on the circumstances of each case." *Id.* Relevant factors include, among other things: "the age of the children, the bonding the children have or do not have with their parent, including any existing clinical or other recommendations concerning visitation, the nature of parenting deficiencies, the physical location of the child and the parent, the limitations of the place of confinement, the services available in the prison setting, the nature of the offense, and the length of the parent's sentence." *Id.* "The department has an obligation to make a record concerning its consideration of this issue." *Id.*

The department's denial of any visitation between Bradley and K.L.P. was unreasonable under the circumstances and constituted a failure to make reasonable efforts. *See In re D.M.*, No. 15-0228, 2015 WL 4160395, at *3 (Iowa Ct. App. July 9, 2015) ("Reasonable efforts often include visitation."); *In re T.A.*, No. 03-0452, 2003 WL 21459553, at *5 (Iowa Ct. App. June 25, 2003) (holding denial of visitation to incarcerated parent where possible and without sufficient explanation "alone was a violation of its reasonable efforts mandate"). By early December 2014, Bradley notified the department that he would be released in February. At that time, the permanency goal was reunification with a target date of April 2015. The department should have been aware the provision of visitation services to Bradley would be necessary because of the timing of his release from

incarceration preceded the target reunification date. *See S.J.*, 620 N.W.2d at 525 (stating the court should consider the length of the parent's sentence). The Mount Pleasant Correctional Facility had a special visitation area for children. Bradley testified it was a good environment for visitation, including a play area, cribs, and television. *See id.* (stating the court should take into consideration the limitations of the institution and setting for visitation). The Ottumwa facility also allowed for parent-child visitation. It appears from the record neither the caseworker not the guardian ad litem had any personal knowledge regarding the facilities at issue and whether visitation could be had there.

There are very few, if any, countervailing reasons why visitation should have been denied in this case. The guardian ad litem opined visitation was not in the child's best interest because the child would receive little benefit from the visitation due to her young age. It seems just as likely that the father should have had visitation with the child precisely because she was of young age so she could have developed a bond before his imminent release. *See* Jean C. Lawrence*, ASFA In the Age of Mass Incarceration, 40 Wm. Mitchell L. Rev. 990, 1002 (2014) (explaining "continuing contact between the incarcerated parent and the child can have an ameliorating and positive effect on both the parent and the child"). The guardian ad litem also opined visitation should be denied because of the travel required to facilitate visitation. We do not find an hour-long car ride for an infant to be of such great concern that it should override the greater concern for maintaining the integrity of the family unit. Further, these types of generalized concerns unrelated to the imminent risk of harm to the child are insufficient

reasons to deny visitation. *See* Iowa Code § 232.107 ("[U]nless the court finds that substantial evidence exists to believe that reasonable visitation or supervised visitation would cause an imminent risk to the child's life or health, the order shall allow the child's parent reasonable visitation or supervised visitation with the child."); *In re E.C.-N.*, No. 12-0135, 2012 WL 1066883, at *3 (Iowa Ct. App. Mar. 28, 2012) (reversing termination order where the agency failed to provide visitation due to generalized concerns). We are also concerned regarding the de facto delegation of visitation rights to the guardian ad litem. *See, e.g., In re Marriage of Stephens*, 810 N.W.2d 523, 530-31 (Iowa Ct. App. 2012) ("The legislature has granted to the court the responsibility to make an impartial and independent determination as to what is in the best interests of the child, and this decision cannot be controlled by the agreement or stipulation of the parties."). We thus hold the department failed to make reasonable efforts under the circumstances.

B.

Bradley contends the juvenile court should have granted him an additional six months to attempt reunification. To defer permanency for six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Even if IDHS had made reasonable efforts with respect to Bradley, we conclude Bradley should have been granted an additional six-month period to

reunite with the child. The basis for removal of the child from the home was solely due to the mother's substance abuse. *See, e.g.*, *In re J.L.S.*, No. 06-0380, 2006 WL 1279202, at \*3 (Iowa Ct. App. May 10, 2006) (making a distinction between the parents' respective cases where the child was removed from the mother and the evidence related to the mother's "problems and why the children could not be returned to her care" as opposed to the father). Here, Bradley was unavailable to care for K.L.P. after her removal from the mother's care because of his incarceration. While the fact of incarceration rendered Bradley unavailable to care for the child at the time of removal, the fact of incarceration did not pose any particular risk to the child. The mere fact of incarceration is an insufficient ground, in and of itself, to terminate a parent's rights. *See In re T.A.*, 2003 WL 21459553, at \*2 (Iowa Ct. App. 2003) ("Our courts, however, have rejected the notion that termination is a necessary result of conviction of a crime and resulting imprisonment."). The evidence showed Bradley may have been discharged from the residential facility in as little as thirty days depending on how quickly he could complete the required services. Thus, the specific basis or condition precluding the reunification of K.L.P. and Bradley could have been corrected within the statutory time period.

An additional consideration leads us to conclude Bradley should have the opportunity to parent K.L.P. While incarcerated, Bradley availed himself of classes to address issues resulting in his incarceration and issues regarding his parenting. He completed a lengthy substance abuse treatment program. He was given a certificate of appreciation for his efforts in the narcotics anonymous

group. He completed a parenting class. He completed the DHS 101 four-week program.[2] Upon release to the Ottumwa facility, Bradley obtained full-time employment. He participated in group classes. We are not naïve to Bradley's criminal history and prior involvement with the department of human services related to other children. If that caused concern for the department, the department should have provided Bradley with services addressing those concerns. Going forward, the department should provide Bradley with services to address those concerns. However, it seems we should proceed on the assumption that the department of corrections provides services to incarcerated persons for the purpose of rehabilitation and behavior modification. Given that assumption, Bradley has availed himself of these services and there is a realistic possibility he could be released from the residential facility and have the opportunity to parent his child. On this record he should be given the opportunity.

IV.

For the foregoing reasons, we reverse the termination order and remand this matter for further proceedings.

**REVERSED AND REMANDED.**

---

[2] Bradley was issued a certification of completion for this class on August 8, 2014, prior to the time of the child's birth and the initiation of this case.