**IN THE COURT OF APPEALS OF IOWA**

No. 15-1158
Filed February 10, 2016

**IN THE INTEREST OF J.C.,**
        **Minor Child,**

**T.C., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Barbara Liesveld,

District Associate Judge.


        A father appeals from the permanency order modifying the permanency

goal from reunification to another permanent planned living arrangement and

ordering another permanent planned living arrangement.  **REVERSED AND**

**REMANDED.**


        Ryan P. Tang of Law Office of Ryan P. Tang, P.C., Cedar Rapids, for

appellant.

        Thomas J. Miller, Attorney General, and Bruce Kempkes, Assistant

Attorney General, for appellee.

        Deborah Skelton, Walford, attorney and guardian ad litem for minor child.


        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Timothy, the father of J.C., appeals from the permanency order changing the permanency goal from reunification to another planned permanent living arrangement ("APPLA"). He contends the court erred in finding the State made reasonable efforts to reunify him with J.C. and in changing the permanency goal to APPLA.

I.

J.C., born in 2002, is one of several children adopted by Timothy and Sandra during their twenty-eight year marriage that ended in 2013. The Iowa Department of Human Services ("IDHS") was involved with the family from 2010 to 2012 following allegations of abuse of the children by Timothy. A no-contact order was entered. The child-in-need-of-assistance ("CINA") case was closed in 2012. By the time of the dissolution decree in October 2013, the oldest child had reached majority age, the middle two children had been permanently removed from the home in the CINA case, and J.C. was the only child left at home. The decree provided for joint legal custody, with Sandra having physical care and Timothy having "phased-in" visitation with J.C. "as determined to be in the child's best interests by the therapist" Sandra Griffith.

In December 2013 Sandra had a stroke, leaving her unable to care for herself or J.C., so she placed him with friends. By February 2014, the friends were no longer able to care for J.C., and IDHS became involved. In March, IDHS petitioned to have J.C. adjudicated in need of assistance pursuant to Iowa Code section 232.2(6)(j) (child without parent) and (k) (parent desires to be relieved of

custody) (2013). At the adjudicatory hearing, Timothy stipulated to J.C.'s adjudication pursuant to section 232.2(6)(j). The court noted, "Placement of the child with his father is not appropriate as the father is Court ordered through District Court to complete therapy to improve their relationship." The court placed J.C. in the custody of IDHS for family foster care placement. The court further ordered

> that the Court grants discretion to the Department of Human Services regarding guided and supported parent/child interaction time between **father and child** as far as increasing the frequency and duration of the contact and decreasing the level of supervision subject to the supervision guidelines ***and conditioned upon approval of the child's therapist.***

(Bold and italics in original). J.C. was placed in family foster care with his older brother, where J.C. has remained throughout these proceedings.

The July 2014 dispositional review order noted the permanency goal remained reunification and continued J.C.'s custody with IDHS for foster care placement. Following an in-court review in December 2014, the court ordered permanency for J.C. be addressed at the next scheduled review hearing, set for late March 2015. Concerning J.C., the court found IDHS had made reasonable efforts to reunify the family and no party had requested additional services or assistance at the review "except for the father is asking for better communication and to be told whether family counseling will occur. The guardian ad litem wants individual counseling sessions to resume for [J.C.] with Sandy Griffith." The court noted the dissolution decree "**requires Sandy Griffith to determine when regular visitation, pursuant to the Decree may occur between [J.C.] and his father.**" (Emphasis in original). The court ordered, "**The State and/or the**

**Department of Human Services shall provide by way of testimony or written report from Sandy Griffith as to her current position.**"

The March 27, 2015 order rescheduled the permanency hearing for J.C. to June and found the IDHS had made reasonable efforts to reunify the family during the review period, including "individual counseling with Sandra Griffith who recommends that visits between Tim and [J.C.] remain supervised for now." Following a contested review and permanency hearing in June, the court observed J.C. was participating in individual counseling with Sandra Griffith, who "continues to recommend there be no contact between [J.C.] and his father." Despite the therapist's recommendation, the court noted weekly supervised visits had been occurring since December 2014. The court continued:

> The visits appear to go well and they have fun together. However, [J.C.] does not want visits to occur in the father's home and wants [the] visits to continue to be fully supervised. Ms. Griffith does not believe that [J.C.] is ready to move toward reunification with his father. The department concurs. [J.C.] displays anxiety about the possibility. Ms. Vail [the IDHS social worker] testified [] that it is not in [J.C.]'s best interests to return home to his father. [J.C.]'s mother is not an option due to her health. Therefore, the department is recommending another planned permanent living arrangement as the permanency outcome for [J.C.]. Ms. Vail believes such a goal would alleviate [J.C.]'s anxiety while continuing to allow him some supervised contact with his father and to continue to work on his issues in counseling and therapy.

The court found the permanency goal should be changed from reunification to APPLA and that the change was in J.C.'s best interests. The court found compelling reasons not to proceed with termination of parental rights, "including [J.C.]'s ongoing relationship with his mother and budding relationship with his father in a fully supervised setting." The court also found services had been

offered to alleviate the situation leading to [J.C.]'s removal and that J.C. could not be returned to the parental home.

## II.

Our review of permanency orders is de novo. *See In re A.A.G.*, 708 N.W.2d 85, 90 (Iowa Ct. App. 2005). We review both the facts and the law and adjudicate rights anew on the issues properly presented. *See id.* We give weight to the juvenile court's findings, but are not bound by them. *See id.*

After a permanency hearing, the court has a number of options. *See* Iowa Code § 232.104(2)(a)-(d). It can return the child home; continue placement for six months if it finds the need for removal will no longer exist after six additional months; direct the State to pursue termination; or, if it finds termination is not in the child's best interests, services were offered to correct the circumstances leading to removal, and the child cannot be returned home, order guardianship and custody transferred to a suitable person, order sole custody with the other parent, or order APPLA. *See id.* § 232.104(2)-(3); *see also In re E.B.*, No. 15-1384, 2015 WL 5970443, at *4 (Iowa Ct. App. Oct. 14, 2015).

## III.

Timothy contends the court erred in (1) finding reasonable efforts had been made and (2) changing the permanency goal to APPLA. The State first responds Timothy did not preserve error on his reasonable-efforts claim because he did not request other or additional services, or if he did, he made the request to service providers instead of the court. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting that while the State has an obligation to make

reasonable efforts to preserve the family, it is a parent's responsibility to demand other, different, or additional services in order to preserve error); *see also In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (stating a parent must make the challenges "at removal, when the case permanency plan is entered, or at later review hearings" and voicing complaints to a social worker is not sufficient; the parent must inform the court).

Timothy requested additional contact with J.C. at least as early as the time of the June 2014 dispositional review order. We conclude error is preserved. The State has provided a number of services, including supervised visitation, individual counseling for J.C., family counseling for Timothy with J.C., family team meetings, family foster care, FSRP (family safety, risk, and permanency) services, Four Oaks, and Total Child. What is lacking is any increase in visitation for Timothy or any progress from fully-supervised visitation to semi-supervised or unsupervised. The main stumbling block appears to be IDHS's and court's delegation of decision-making authority on visitation to J.C.'s therapist, Sandra Griffith. We recognize the dissolution court ordered a period of phased-in visitation for Timothy that "shall end when Sandra Griffith determines that regular visitation can should commence." The phased-in visitation was designed to give Timothy and J.C. time to develop a relationship because Timothy had been absent from J.C.'s life for approximately two years. The delegation of judicial authority to a third party, in the context of dissolutions of marriage, has been rejected by Iowa appellate courts and courts around the nation. *See In re Marriage of Stephens*, 810 N.W.2d 523, 530 n.3 (Iowa Ct. App. 2012) (listing

decisions from other jurisdictions). It is the court's "responsibility to make an impartial and independent determination as to what is in the best interests of the child, and this decision cannot be controlled by the agreement or stipulation of the parties." *Id.* at 531. Although a court can "seek and consider" a therapist's recommendations, it is the court's responsibility to make the decision. *See id.*[1]

We conclude the same principle regarding therapists should apply here in a CINA proceeding. Although the parties in the dissolution stipulated to Sandra Griffith determining how visitation should proceed, the juvenile court is responsible to act in the child's best interests, and IDHS is charged with making reasonable efforts to reunify the family. *See* Iowa Code §§ 232.1, 232.102. Reasonable efforts "covers both the efforts to prevent and eliminate the need for removal." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). While the focus is on efforts to improve parenting, it also "includes visitation designed to facilitate reunification while providing adequate protection for the child." *Id.*

At the permanency hearing, Charli Vail, an APPLA case manager with IDHS, testified concerning visitation between Timothy and J.C. and Sandra Griffith's involvement.

---

[1] We also note that the juvenile court has exclusive jurisdiction over the child in child in need of assistance proceedings. *See* Iowa Code § 232.61(1). The grant of exclusive jurisdiction empowers the juvenile court to enter orders for the child's best interests even if contrary to the terms of a dissolution decree. *See* Iowa Code §232.1. The authority includes the determination of visitation rights of parents. *See In re K.R.*, 537 N.W.2d 774, 777 (Iowa 1995). Once the juvenile court assumes exclusive jurisdiction, it is not bound by the visitation terms fixed in the dissolution decree even to the point of terminating parental rights. *See* Iowa Code § 232.109 (granting the juvenile court exclusive jurisdiction of termination of parental right actions under Iowa Code chapter 232); *In re Warren*, 178 N.W.2d 293, 297 (Iowa 1970).

Q. Now, according to your testimony, since those [visits] seem to be going okay, and the Department has discretion subject to the therapist's recommendation, why have we not made any progress, or why have visits not progressed past semi-supervised visits? A. I have made contact with Sandra Griffith, the individual therapist for [J.C.], and I have had conversations with her as far as what her recommendations are for moving forward, the type of things that her and [J.C.] talk about, and it's my understanding from this courtroom that Sandra is to give a recommendation as far as whether or not the contact is to go from there. And so her recommendation remains that they continue to have fully supervised contact.

Vail then spoke about a letter to the court from Griffith that was attached to a March report. Vail indicated the letter recommended continuing supervised visits. The court then inquired about the letter and the report, noting it did not have it. We also are unable to find the March letter from Griffith in the record.

When asked about her last contact with Griffith, Vail testified it was after the March hearing, but at least two months before the June permanency hearing. On cross examination, Timothy's attorney questioned Vail about giving Griffith control over visitation and Griffith's lack of contact with the IDHS.

Q. Let's talk a little about Sandra Griffith. If I understand correctly, you are basically leaving it up to Sandra Griffith as to what level of visit [J.C.] have with his father? A. Yes, I have been told that.
Q. You yourself haven't spoken with Sandra for a couple of months? A. Yes.
Q. You are leaving it up to Sandra Griffith to contact you with her position changes? A. Correct, that is our agreement.
Q. I realize that you have not been with this case since its inception, but are you aware that Sandra Griffith historically is not good about staying in contact with the Department and the other parties in this case? A. I understand that is the history. Since I have had this case, I have talked to Sandra on multiple occasions.
. . . .
Q. Did you ever consider that maybe coming into a permanency hearing it would be a good idea to touch base with Sandra Griffith again just to see if her position has changed? A. I

believe if Sandra's position had changed that she would have contacted me.

Q. Despite her track record to the contrary? A. Like I said, my track record with her has been she has returned my calls.

At the close of the State's evidence, the court also questioned Vail.

Q. Are you basing your recommendation on the sole fact of [J.C.] being out of care for the past fifteen months or for other reasons. A. For other reasons.

Q. And if you would articulate that for me one more time? A. For one reason, Sandra Griffith, who he sees in individual therapy, has expressed that in her private conversations with [J.C.], he is not ready to move forward to reunification with Tim. She doesn't feel that [J.C.] is ready to move forward to unsupervised or semi-supervised visits, and I also base that on my conversations with [J.C.] when he meets with me each month, and we talk about what he wants and what his feelings are in his relationship and where he lives.

Q. Then what harm would it be to leave the goal as currently set as reunification and continue to move slowly? A. I think in [J.C.]'s mind, the goal is reunification and he hears people talk about that permanency goal and what that is going to be. [J.C.] has a constant anxiety of when that is going to happen, is it going to be next week or two months, I think it creates anxiety for [J.C.].

The court asked whether guardianship or termination of parental rights had been considered. Vail said she had not talked to anyone about guardianship. She also said termination was not in J.C.'s best interests. The court then asked about the practical effect of changing the permanency goal from reunification to APPLA.

Q. If the court follows your recommendation and changes the permanency goal to APPLA, how will that impact the services that are provided directly to Tim or Sandra? A. Visitation would still continue to occur. . . .

Q. How often do you envision visits to continue to occur? A. Between [J.C.] and Tim?

Q. Yes. A. I don't see any reason that the visits couldn't continue to occur at least twice a month, if not more, just depending on scheduling and working things out.

Q. So, in fact, the change in permanency goal would decrease the contact between Tim and [J.C.]? A. It's possible. I think that it could also be maintained as it is now. I know that [J.C.] is really enjoying the time that he is spending with him now.

In addition to letting the counselor, Sandra Griffith, control visitation and not having any recent information or report from her in the file, IDHS stopped family counseling with J.C. and Timothy because it thought the counselor was too "pro" Timothy. The family counseling was the only opportunity for J.C. and Timothy to work on resolving issues from past abuse.

The district court found Sandra Griffith "continues to recommend there be no contact between [J.C.] and his father, Tim." We are unable to make any finding concerning what the counselor recommends because the record does not contain any report from her and she did not testify at the permanency hearing. We also do not find the letter the court mentioned in the file. As shown from the testimony of Vail, she had not contacted Griffith for at least two months before the hearing. Although she acknowledged Griffith was not good about contacting the IDHS, she testified she thought Griffith would contact her if there was any change in recommendation. Vail did not take the initiative to contact Griffith for an update or to request a report for the court.

Instead of increasing visitation or moving toward semi-supervised or unsupervised visitation, IDHS has cut family counseling, and likely intends to reduce visitation if the permanency goal is changed to APPLA. We conclude the State did not fulfill its mandate to make reasonable efforts to reunify J.C. with Timothy.

Following a permanency hearing, the district court has a limited number of options under section 232.104. *See* section 232.104(2) ("After a permanency hearing the court *shall* do one of the following:") The court can (a) return the child to the child's home; (b) continue placement for six months if it determines the need for removal will no longer exist after six months; (c) order the county attorney to pursue termination of parental rights; or (d) enter an order (1) transferring guardianship and custody to a suitable person, (2) transferring sole custody from one parent to another, (3) transferring custody to a suitable person for long-term care, or (4) if compelling reasons exist for not choosing (1), (2), or (3) order APPLA. *See* Iowa Code § 232.104(2)(a)-(d). In order to enter a permanency order pursuant to section 232.104(2)(d), such as is the case here where the court ordered APPLA, the court must find convincing evidence of all of the following: (a) termination is not in the child's best interest, (b) services were offered to correct the circumstances leading to the child's removal, and (c) the child cannot be returned home. *Id.* § 232.104(3). Because we have concluded IDHS did not make reasonable efforts to reunify J.C. with his father, we also conclude there is not convincing evidence services were offered to correct the circumstances leading to the child's removal. Consequently, it is not proper to order any of the options set forth in section 232.104(2)(d), including APPLA. Accordingly, we reverse the permanency order and remand for further proceedings.

**REVERSED AND REMANDED.**